# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

IN RE: Visual Semiconductor, Inc. and Rembrandt 3D Holding Ltd.

*Petitioners.*

*On Petition for a Writ of Mandamus and Prohibition to the
United States Bankruptcy Court for the Eastern District of Pennsylvania in
Case No. [•]
Judge [•]*

---

## EMERGENCY JOINT PETITION FOR (I) WRIT OF MANDAMUS; (II) WRIT OF PROHIBITION; (III) MOTION FOR STAY PENDING APPEAL; AND (IV) IN THE ALTERNATIVE, MOTION FOR WITHDRAWAL OF REFERENCE TO BANKRUPTCY COURT

---

Donald N. David, SBN: 304846
Mark S. Lichtenstein (*pro hac vice* admission to be applied for)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email:
donald.david@akerman.com
mark.lichtenstein@akerman.com

December 9, 2024

R. Adam Swick (*pro hac vice* admission to be applied for)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701
Email: adam.swick@akerman.com

John H. Thompson (*pro hac vice* admission to be applied for)
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959
Email: john.thompson@akerman.com

*Attorneys for Visual Semiconductor, Inc.*

- and -

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

- and –

*/s/ Chris Michaels*
Chris Michaels, Esq.
michaels@bpmlegal.com
Brown & Michaels, PC
400 M & T Bank Building
118 North Tioga Street
Ithaca, NY 14850

*Attorneys for Rembrandt 3D Holding Ltd.*

79079341;4

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4(a) and Federal Rule of Appellate Procedure 26.1, counsel for Petitioners Visual Semiconductor, Inc. and Rembrandt 3D Holding Ltd. certify the following:

1. The full name of every party represented by us is Visual Semiconductor, Inc. and Rembrandt 3D Holding Ltd.

2. There are no other real parties in interest represented by us.

3. All parent corporations and any publicly held companies that own 10% or more of the stock of the parties that we represent are as follows: None.

4. The names of all law firms and the partners or associates that appeared for the parties now represented by us or that are expected to appear in this court are:

**Akerman LLP:**

Donald N. David, SBN: 304846
Mark S. Lichtenstein
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
        mark.lichtenstein@akerman.com

R. Adam Swick
AKERMAN LLP
500 West 5th Street, Suite 1210

79079341;4

Austin, TX 78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701
Email: adam.swick@akerman.com

John H. Thompson
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959
Email: john.thompson@akerman.com

**Devlin Law Firm LLC:**

Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

**Brown & Michaels, PC:**

Chris Michaels, Esq.
michaels@bpmlegal.com
BROWN & MICHAELS, PC
400 M & T Bank Building
118 North Tioga Street
Ithaca, NY 14850

5.  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

4

- *In re Stream TV Networks, Inc.*, Case No.: 23-10763 (AMC) in the United States Bankruptcy Court for the Eastern District of Pennsylvania

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees): Not Applicable.

Dated: December 9, 2024

/s/ *Adam Swick*
Adam Swick

*Attorney for Visual
Semiconductor, Inc.*

/s/ *Andrew DeMarco*
Andrew DeMarco

*Attorney for Rembrandt 3D
Holding Ltd.*

79079341;4

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................. i

TABLE OF AUTHORITIES .......................................................... iii

RELIEF SOUGHT .........................................................................1

QUESTION PRESENTED .............................................................2

STATEMENT OF JURISDICTION...............................................3

INTRODUCTION ..........................................................................3

STATEMENT OF THE CASE........................................................6

STANDARD OF REVIEW ..........................................................18

I.      A WRIT OF MANDAMUS SHOULD ISSUE..........................23

II.     A WRIT OF PROHIBITION SHOULD ISSUE. ........................31

III.    THE COURT SHOULD STAY THE SALE ORDER PENDING
        APPEAL. ......................................................................................34

        a.      Petitioners Have a High Likelihood of Success on the Merits ..........36

                1.      The Trustee may not sell the Debtors' property unless
                        that property constitutes property of the Debtors' estates
                        and, before approving a sale, the Court must first
                        determine whether such property constitutes property of
                        the estates. ................................................................................37

                2.      The 9019 Agreement and Sale Motion taken together
                        constitute an improper *sub rosa* plan of reorganization
                        that cannot be approved by this Court. ....................................41

                3.      The Proposed Sale Process is Neither Fair nor
                        Reasonable and is Subject to a Heightened Scrutiny
                        Standard. ...................................................................................44

        b.      Petitioners will Suffer Irreparable Harm if Enforcement of the
                Sale Order is Not Stayed Pending Appeal ..........................................47

        c.      A Stay Pending Appeal Would Not Substantially Harm Other
                Parties with an Interest in the Litigation .............................................50

        d.      A Stay Pending Appeal is in the Public Interest .................................50

        e.      The Court Should Not Require a Bond Pending the Appeal ..............51

IV.    THE REFERENCE SHOULD BE WITHDRAWN. ....................................52

    a.    Withdrawal of the Reference is Mandatory Under 28 U.S.C. § 157(d) ....................................................................................52

    b.    In the Alternative, the District Court Should Withdraw the Reference Under the Discretionary Standard of Section 157 .............57

CONCLUSION....................................................................................................57

CERTIFICATE OF COMPLIANCE.....................................................................60

CERTIFICATE OF SERVICE .............................................................................62

79079341;4

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Conine (In re Robertson)*,
  203 F.3d 855 (5th Cir. 2000) ............................................................................27

*Apple Inc. v. Samsung Elecs. Co*.,
  809 F.3d 633 (Fed. Cir. 2015) ...........................................................................38

*Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.)*,
  504 B.R. 754 (S.D.N.Y. 2014) ..........................................................................24

*Boggs Contracting, Inc. v. Freismuth*,
  2021 U.S. Dist. LEXIS 252335 (M.D. Fla. Dec. 27, 2021) ..............................37

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004)...........................................................................................13

*Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims
  (In re Papercraft Corp.)*,
  211 B.R. 813 (W.D. Pa. 1997), aff'd, 160 F.3d 982 (3d Cir. 1998).........1, 16, 34

*Contratian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.)*,
  600 F.3d 231 (2d Cir.2010) ...............................................................................14

*Crown Vill. Farm, LLC v. Arl. L.L.C. (In re Crown Vill. Farm, LLC)*,
  415 B.R. 86 (Bankr. D. Del. 2009).....................................................................34

*Darby v. Zimmerman (In re Popp)*,
  323 B.R. 260 (B.A.P. 9th Cir.2005) ...................................................................28

*Eli Global, LLC v. Univ. Directories, LLC*,
  532 B.R. 249 (M.D.N.C. 2015) ..........................................................................45

*Energy Future Holdings Corp. v. Del. Tr. Co*.,
  648 F. App'x 277 (3d Cir. 2016) ........................................................................31

*Fresh Prepared Foods, Inc. v. Farm Ridge Foods LLC*,
  2013 WL 4804816 (D.N.J. Sept. 9, 2013)..........................................................28

79079341;4

*G4S Secure Integration LLC v. United States*,
   161 Fed. Cl. 387 (2022) ......................................................................38

*In re 388 Route 22 Readington Holdings, LLC*,
   2021 WL 4811409 (3d Cir. Oct. 15, 2021), *cert. denied*, 142 S. Ct. 1674 (U.S.
   2022) ...............................................................................................15

*In re Abbotts Dairies of Pennsylvania, Inc.*
   788 F.2d 143 (3d Cir. 1986) ..........................................16, 17, 19, 33

*In re Bidermann Indus. U.S.A.*,
   203 B.R. 547 (Bankr. S.D.N.Y. 1997) ........................................35, 36

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018) ............................................................13

*In re Blixseth*,
   No. 09-60452, 2010 Bankr. LEXIS 585 (Bankr. D. Mont. Feb. 23, 2010) ........35

*In re Braniff Airways, Inc.*,
   700 F.2d 935 (5th Cir. 1983) .......................................................31, 32

*In re Coburn*,
   250 B.R. 401 (Bankr. M.D. Fla. 1999) ..............................................27

*In re Colony Hill Assocs.*,
   111 F.3d 269 (2d Cir. 1997) ...............................................................18

*In re Crowthers McCall Pattern, Inc.*,
   114 B.R. 877 (Bankr. S.D.N.Y. 1990) ................................................31

*In re DeCurtis Holdings*,
   2023 WL 5153645 ...............................................................................37

*In re Filtercorp Partners, L.P.*,
   163 F.3d 570 (9th Cir. 1998) ..............................................................18

*In re ICL Holding Co., Inc.*,
   802 F.3d 547 (3d Cir. 2015) ...............................................................14

*In re Innkeepers USA Trust*,
   442 B.R. 227 (Bankr. S.D.N.Y. 2010) ...............................................36

iv

*In re Interiors of Yesterday, LLC*,
  Case No. 02-30356 (LMW), 2007 WL 419646 (Bankr. D. Conn. Feb. 2, 2007)
  ...............................................................................................................28

*In re K & D Indus. Servs. Holding Co., Inc.*,
  850 F. App'x 966 (6th Cir. 2021) ....................................................................15

*In re McCrory Corp.*,
  160 B.R. 502 (S.D.N.Y. 1993) ........................................................................45

*In re Micron Tech., Inc.*,
  875 F.3d 1091 (Fed. Cir. 2017) .......................................................................13

*In re Palmer Equip., LLC*,
  623 B.R. 804 (Bankr. D. Utah 2020).................................................................14

*In re Revel AC, Inc.*,
  802 F.3d 558 (3d Cir. 2015) ...............................................................24, 25, 36

*In re Sindesmos Hellinikes-Kinotitos of Chicago*,
  607 B.R. 898 (N.D. Ill. 2019) ..........................................................................40

*In re Stream TV Networks, Inc.*,
  Case No.: 23-10763 (AMC) ...............................................................................1

*In re Summit Global Logistics, Inc.*,
  2008 Bankr. LEXIS 896 (Bankr. D.N.J. Mar. 26, 2008)...................................35

*In re Univ. Heights Ass'n*,
  2007 Bankr. LEXIS 1200 (Bankr. N.D.N.Y. Jan. 22, 2007)..............................35

*In re Westpoint Stevens Inc.*,
  333 B.R. 30 (S.D.N.Y. 2005) .....................................................................32, 33

*In re Whitehall Jewelers Holdings, Inc.*,
  Case No. 08-11261 (KG), 2008 WL 2951974 (Bankr. D. Del. July 28, 2008).27,
  28

*In re Worcester Country Club Acres, LLC*,
  655 B.R. 41 (Bankr. D. Mass. 2023) ................................................................27

v

79079341;4

*Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.)*,
    780 F.2d 1223 (5th Cir. 1986) .................................................................32

*Jones v. GE Capital Mortgage Co. (In re Jones)*,
    179 B.R. 450 (Bankr. E.D. Pa. 1995) ..................................................26

*Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*,
    2023 U.S. Dist. LEXIS 25025 (M.D. Fla. Feb. 14, 2023)...................38

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*,
    105 F.3d 837 (2d Cir.), *cert. denied,* 520 U.S. 1196, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997) ...........................................................................14

*Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.)*,
    414 F.3d 576 (6th Cir. 2005) .................................................................14

*Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC*,
    2012 U.S. Dist. LEXIS 200492 (S.D. Fla. 2012) ................................38

*Mission Prod. Holdings, Inc. v. Tempnology, LLC*,
    139 S. Ct. 1652, 203 L. Ed. 2d 876 (2019).........................................26

*Moody v. Amoco Oil Co.*,
    734 F.2d 1200 (7th Cir. 1984), cert denied, 469 U.S. 982 (1984).....................26

*Motorola Inc. v. Official Comm. Of Unsecured Creditors and JP Morgan Chase (In re Iridium Operating LLC)*,
    478 F.3d 452 (2d Cir. 2007) .......................................................31, 33

*News Am. Mktg. In-Store, LLC v. Emmel*,
    429 F. App'x 851 (11th Cir. 2011) (unpublished)...............................38

*Nken v. Holder*,
    556 U.S. 418 (2009)..............................................................................25

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. by & Through Mabey (In re Cajun Elec. Power Coop.)*,
    119 F.3d 349 (5th Cir. 1997) .................................................................31

*Pursuit Capital Mgmt. Fund 1 v. Burtch (In re Pursuit Capital Mgmt. LLC)*,
    874 F.3d 124 (3d Cir. 2017) .................................................................15

vi

*Republic of Phil. v. Westinghouse Electric Corp.*,
   949 F.2d 653 (3d Cir.1991) ...............................................................................24

*Rodriguez v. Countrywide Home Loans, Inc.*,
   421 B.R. 341 (S.D. Tex. 2009) ...........................................................................42

*Ross v. A V Car & Home, LLC (In re Brown)*,
   Case No. 16-00466, A.P. No. 18-10026, 2019 Bankr. LEXIS 286, 2019 WL
   413625 (Bankr. D.C. Jan. 30, 2019) ..................................................................28

*SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)*,
   2008 WL 2498048(3d Cir. June 24, 2008) .........................................................27

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
   895 F.3d 1304 (Fed. Cir. 2018) ..........................................................................38

*United States v. Salerno*,
   932 F.2d 117 (2d Cir.1991) ................................................................................14

*Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*,
   362 F.3d 603 (9th Cir. 2004), withdrawn and modified by 126 Fed. App'x 353
   (9th Cir. 2005).....................................................................................................28

**Statutes**

U.S.C. § 157(a) ...............................................................................................2, 41

11 U.S.C. § 363(m) ......................................................................................passim

28 U.S.C. § 157 ..........................................................................................4, 42, 45

28 U.S.C. § 157(d) .......................................................................................passim

28 U.S.C. § 1334(b) ........................................................................................2, 41

28 U.S.C. § 1651(a) .............................................................................................13

All Writs Act, 28 U.S.C. § 1651 .......................................................................2, 13

Section 363 of the Bankruptcy Code ....................................................16, 28, 33, 37

Section 363(f) of the Bankruptcy Code .................................................22, 27, 28, 37

UCC Article 9 ......................................................................................................20

79079341;4

## Rules

Bankruptcy Rule 8007 ....................................................................................40

Fed. R. App. P. 21(d)(1) ...............................................................................48

Fed. R. App. P. 26.1 .......................................................................................3

Fed. R. App. P. 26.1(b) ..................................................................................4

Fed. R. App. P. 32(a)(5) ...............................................................................48

Fed. R. App. P. 32(a)(6) ...............................................................................48

Fed. R. App. P. 6004(h) .................................................................................9

Fed R. Bankr. P. 5011 ...................................................................................42

Fed. R. Bankr. P. 5011(a) ............................................................................41

Fed. R. Bankr. P. 8007 ..................................................................................40

Fed. R. Bankr. P. 8007(a)(1) ........................................................................24

Fed. R. Bankr. P. 8007(b)(2)(A) ..................................................................24

Fed. R. Civ. P. 26 ..........................................................................................44

Fed. R. Civ. P. 30 and Rule 32 .....................................................................44

Local Bankruptcy Rule 5011-1 .....................................................................42

*Local Rule of Bankruptcy Procedure 5070-1(g)* .........................................1

Rule 21(a)(2) .................................................................................................50

Rule 47.4(a) ....................................................................................................3

Rule 5011(c) of Bankruptcy Rules ...............................................................41

## Other Authorities

Adv. No. 119 ...................................................................................................4

Sixth Amendment ..........................................................................................45

Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3954 (5th ed. 2024 update)........................................................................................................25

Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution........................................................................................................44

79079341;4

# RELIEF SOUGHT

Petitioners Visual Semiconductor Inc. ("**VSI**") and Rembrandt 3D Holding Ltd. ("**Rembrandt**") respectfully and jointly request that the U.S. District Court for the Eastern District of Pennsylvania (the "**District Court**") grant (i) an emergency petition for writ of mandamus, (ii) a writ of prohibition; (iii) a motion for stay pending appeal of the Sale Motion; (iv) a temporary restraining order preventing the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court**") from approving the motion[1] for sale of the assets of Stream TV Networks, Inc. and Technovative Media, Inc. (the "**Debtors**") filed by the Court-appointed chapter 11 trustee (the "**Trustee**") in *In re Stream TV Networks, Inc.*, Case No.: 23-10763 (AMC) in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "**Bankruptcy Court Proceeding**"); and, (v) in the alternative, withdraw the reference of the dispute and transfer it to the District Court.

---

[1] *Motion for (I) an Order (A) Approving Bidding Procedures and Form Asset Purchase Agreement for the Sale of Substantially all of the Debtor's Assets Including Approval of the Provisions for Designation of a Stalking Horse, (B) Establishing the Notice Procedures and Approving the Form and Manner of Notice Thereof and scheduling and Auction, (C) Approving Procedures for Assumption and Assignment of Certain Executory Contracts and Unexpired Leases (D) Scheduling a Sale Hearing, and (E) Granting Expedited Consideration Pursuant to Local Rule of Bankruptcy Procedure 5070-1(g); and (F) Granting Related Relief and (II) an Order Approving (A) the Sale of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto and (C) Granting Related Relief* (Docket No. 750 in the Bankruptcy Court Proceeding, the "**Sale Motion**").

79079341;4

## QUESTION PRESENTED

1. Whether mandamus should issue because the Bankruptcy Court erred in (i) failing to evaluate whether the proposed sale of assets that incorporate non-debtor property can be granted "free and clear" of liens, claims, and encumbrances under section 363(f) of the Bankruptcy Code; (ii) failing to evaluate whether the Proposed Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code; and (iii) failing to allow Petitioners to make a proper evidentiary record regarding the same. Relatedly, whether the Trustee should be allowed to transfer control of trade secrets owned by Rembrandt to SeeCubic's control in violation of 18 USC 1832, and whether a Proposed Purchaser can be considered a good faith purchaser while committing a crime, specifically conspiring in the theft of trade secrets under in violation of 18 USC 1832.

2. Whether prohibition should issue because it will (i) prevent the Bankruptcy Court from interfering with the District Court's determination of the case pending appeal, (ii) prohibit the Bankruptcy Court from issuing orders in matters over which it has no jurisdiction - specifically here, authorizing the transfer of assets that do not constitute property of the estate under section 541 of the Bankruptcy Code.

79079341;4

3. Whether an emergency stay of the order granting the Sale Motion should be granted by this Court.

4. Whether the reference should be withdrawn.

## STATEMENT OF JURISDICTION

This Court has jurisdiction to grant prohibition and mandamus relief under the All Writs Act, 28 U.S.C. § 1651.

This Court has jurisdiction to grant the withdrawal of the reference under 28 U.S.C. § 1334(b) and U.S.C. § 157(a).

## INTRODUCTION

Mandamus and prohibition are an extraordinary measures reserved for extraordinary circumstances. But this case is extraordinary in every respect.

Petitioners have been extremely vocal and abundantly clear throughout the Bankruptcy Court Proceeding in their opposition to the conduct of the Trustee as well as the Hawk Parties (as defined below), specifically relating to the identity and activities of the proposed stalking horse - now Purchaser (as defined below), and their lack of good faith. However, the Bankruptcy Court has turned a blind eye to the points and cautions that the Petitioners have repeatedly attempted to raise, opting instead to serially deny Petitioners the ability to make a proper evidentiary record.

The key questions presented here are targeted, and the answers are clear: The assets the Trustee proposes to sell and transfer contain property owned by non-debtor

3

third parties, and thus the sale does not qualify for 363(f) treatment and cannot be approved as an assignment/transfer "free and clear" of the claims and encumbrances under the Bankruptcy Code.  Moreover, the Proposed Purchaser is not a "good faith" purchaser, and as such, the sale of the Debtors' assets to the Proposed Purchaser should clearly be disallowed.  The Bankruptcy Court's dismissal of the Petitioners' arguments throughout the Bankruptcy Court Proceedings were steeped in explicit violations of due process and a mistaken view (or complete lack of view) of sections 363(f) and 363(m) of the Bankruptcy Code in light of the assets and circumstances involved in this case.

SeeCubic/Hawk and the Trustee are conspiring to transfer Rembrandt's trade secrets from Stream's control to SeeCubic's control without authorization from Rembrandt in violation of 18 USC 1832. This subjects all those involved in the conspiracy to civil and criminal liability but those parties are asking this court to sanction their criminal theft of trade secrets that do not belong to the estate. A purchaser committing a crime through the sale cannot be a good faith purchaser.

Further, the District Court should stay entry of the order submitted by the Trustee granting the sale of the assets (the "**Sale Order**") pending the appeal. Beyond the facts that the assets cannot be sold "free and clear" and the Proposed Purchaser is not a "good faith" purchaser, as discussed at length herein, there are a plethora of other reasons why Petitioners have a high likelihood of success on the

merits for a judgment that the Sale Transaction cannot go forward. For example, (a) the Trustee may not sell the Debtors' property unless that property constitutes property of the Debtors' estates and, *before* approving a sale, a court must first determine whether such property constitutes property of the estates; (b) the 9019 Agreement and Sale Motion taken together constitute an improper *sub rosa* plan of reorganization that cannot be approved; and (c) the proposed sale process is neither fair nor reasonable and is subject to a heightened scrutiny standard.

Finally, the reference should be withdrawn as mandatory under 28 U.S.C. § 157(d). The majority of courts find withdrawal of the reference mandatory when a claim or defense entails "material and substantial consideration" of non-Bankruptcy Code federal law. Petitioners submit that (i) withdrawal of the reference is *mandatory* under 28 U.S.C. § 157(d) because the proceedings will involve substantial and material consideration of non-bankruptcy federal law (including law relating to due process and intellectual property) and (ii) in the alternative, the District Court should withdraw the reference under the discretionary standard of 28 U.S.C. § 157 because it is indisputably best suited to apply that non-bankruptcy law to the painstakingly litigated facts and related issues and to decide those issues as expeditiously and economically as possible.

## STATEMENT OF THE CASE

This matter revolves around the Trustee's attempts to sell the assets of the Debtors to the Hawk Parties (as defined below), contrary to law and against the interests of other stakeholders in the cases.

On January 4, 2024 the Debtor, in Adv. Case No 23-00057-AMC, obtained a Temporary Restraining Order ("**Bankruptcy TRO**") (Adv. No. 119) preventing the Hawk Parties from using the Debtors' technology to compete with the Debtors. Prior to even the entry of the Bankruptcy TRO, prepetition on August 9, 2022, the Delaware Chancery Court had already issued a temporary restraining order enjoining SeeCubic, Inc. from selling Stream's assets, which assets the Hawk Parties have been unlawfully in their possession since then (the "**Delaware TRO**" together with the Bankruptcy TRO, the "**TROs**").

The Hawk Parties' efforts to take control of the Debtors' property preceded and precipitated the filing of the Chapter 11 Cases, continued throughout this case in violation of the automatic stay and a Worldwide Stay Order (defined below)[2], and continued after entry of the Bankruptcy TRO. Since entry of the TROs, the Debtors, Rembrandt, and VSI have, at various points throughout the case sought to enforce

---

[2] On December 14, 2023, in light of the Hawk Parties' extra-territorial misconduct and misappropriation, possession, and control of Debtor assets, the predecessor judge in this bankruptcy proceeding (Judge Magdeline D. Coleman) recognized the ongoing damage to the Debtors estates and potential harms to third parties (e.g. Rembrandt) and issued a Stipulated Order Restating and Enforcing the Worldwide Automatic Stay (the "**Worldwide Stay Order**," attached hereto as **Exhibit A**) (Docket #517).

the automatic stay, the Worldwide Stay Order, and the TROs against the *ultra vires* actions of the Hawk Parties to take control of the Debtors assets, which efforts, once a Chapter 11 Trustee was appointed, shifted to utilizing the Trustee to take control of those assets. Notwithstanding the Hawk Parties' constant violations of the automatic stay, the Worldwide Stay Order, and the TROs, the Bankruptcy Court refused to sanction or prevent the Hawk Parties from repeatedly violating these multiple court orders through their unlawful possession of estate assets, which possession persists to today. While the 9109 Agreement with the Hawk Parties ignores all of their stay and TRO violations throughout the case, the Trustee's proposed sale cannot overcome Rembrandt's property interests (and the sale's immediate infringement upon Rembrandt's intellectual property rights). As such, if completed the sale would itself be violation of the TRO and, if consummated as proposed, it will destroy all the value in the estate by rendering the Debtors' IP unusable and the StreamTV Debtors' hopelessly unable to reorganize – all while irrevocably destroying Rembrandt's trade secrets without a remedy. The Bankruptcy Court failed to address these violations or their clear consequences: the TRO transgressors will achieve the precise purpose of their transgressions – transfer and assignment of title to the assets they have misappropriated, controlled, and/or sought to possess since the commencement of these cases – all under the "color of law" and with the imprimatur of the Bankruptcy Court and its appointed fiduciary, the Trustee.

79079341;4

On June 7, 2024, the Bankruptcy Court entered an order approving the Trustee's Settlement (the "**9019 Agreement**") with Hawk Investment Holdings, Ltd., in its capacity as Collateral Agent for the secured noteholders of SeeCubic, Inc., SLS Holdings VI, LLC, and various individuals who received releases, including Arthur Leonard, Robert Morton, Shadron L. Stastney, Alastair Crawford, Asaf Gola, Kevin Gollop, Patrick Miles, Patric Theune, and Krzysztof Kabacinski (collectively, the "**Hawk Parties**"). The Bankruptcy Court entered the 9019 Agreement despite the obvious weakness of the evidentiary record, an exceptionally large claim allowance, and clear conflicts between the Debtors' estates and the Hawk Parties, specifically SeeCubic, Inc. and its principal, Shadron Stastney.

Nearly four months later, on September 30, 2024, the Trustee filed the Sale Motion, despite a multitude of alternative funding, purchase, and plan proposals from VSI and Rembrandt to the Trustee to achieve a better outcome for all stakeholders than the one contemplated by the 9019 Agreement – including for unsecured creditors. The process contemplated by the Sale Motion disproportionately benefited the Hawk Parties at the expense of all other stakeholders.

As anticipated, the sales process produced no bids beyond that of SeeCubic as proposed stalking horse bidder (the "**Proposed Purchaser**"). In fact, according to SSG's (defined below) statements on the record at the November 13, 2024 hearing,

no other party has expressed any interest whatsoever. [3] Indeed, as the Court heard from the Trustee and his advisors at the November 13th hearing, after the Trustee's marketing efforts, no prospective bidder was sufficiently interested in the Debtors' assets to sign a simple NDA to access the sale data room. Only VSI signed an NDA, but the Trustee's investment banker did not even bother sending VSI the teaser used to market the Debtors' assets.   Given the glaring issues and legal defects regarding the sale, the likelihood of VSI placing a bid is practically non-existent, and no other party could reasonably be expected to submit a bid under the circumstances. Given the asset value involved, that no contacted party was interested enough to sign an NDA is an indictment of the Trustee's marketing and sale process, which is borne out by the inexplicable fact that none of the most-likely bidders for the 3-D no glasses technology (i.e. Ultra-D technology) appear to have sent teasers or contacted in any way.[4]

The Trustee has failed to properly assess or disclose what is being sold and does not even know what he is actually selling. In contravention of his duties to inventory and marshal the estates' assets, the Trustee refused to recover millions of dollars in the Debtors' property from the Hawk Parties or wrest control of high-value

---

[3] Which statements were reinforced by SSG's testimony at the December 4, 2024 sale hearing. *See* December 4, 2024 Hearing Transcript attached hereto as **Exhibit B** at 63:22-25, 64:1-4.

[4] *See* December 4, 2024 Hearing Transcript, attached hereto as **Exhibit B** at 72:10, 73:21 for cross-examination transcript testimony of SSG's Scott Victor regarding the 23 licensees identified in the Philips License Agreement and whether those most likely bidders for the Ultra-D technology were contacted.

79079341;4

assets from SeeCubic, Inc. and its principal, Mr. Stastney.  Indeed, during the limited cross-examination that the Bankruptcy Court permitted at the sale hearing, the Trustee admitted that he made no effort to inventory or marshal the estates' assets (see December 4, 2024 Hearing Transcript at 25:7-14[5]), nor did he make an effort to determine whether the assets implicated by the proposed sale (and identified by the Asset Purchase Agreement) are actually property of the Debtors' estates (see *Id*. Pages 26-29),  Meanwhile, the Trustee willfully ignores the conduct and conflicts of interest presented by Mr. Stastney occupying both sides of the Trustee's purported "363 sale" transaction – actively controlling SeeCubic, B.V. and its assets (as sole director) while serving as "stalking horse bidder" for assets ***already in his possession, custody, or control***. Even if a third party were to purchase the assets, the Trustee has failed to obtain any assurance that the Hawk Parties will relinquish the Debtors' property or cease their unauthorized use of the Debtors' intellectual property. In open defiance of multiple court orders, the Hawk Parties have refused to turn over the Debtors' assets for years, further undermining the viability of the sale.

---

[5] *See* December 4, 2024 Hearing Transcript at 25:7-14 ("Question: Did you ever do an inventory of the assets of Stream TV? Answer: Well, that was one of the issues in the case that is not typical in a Chapter 11 Trustee case. There were no operations and it was unclear at the time, and remains unclear, exactly which entities of Mr. Rajan's have possession of tangible  assets, records, et cetera. So I don't believe Stream TV has  certainly any significant tangible assets. And if they do, I have not been aware -- made aware of them or know their location or who is in control of them.")

10

Bizarrely, the Bankruptcy Court allowed the Trustee's counsel to unilaterally withdraw (without prejudice) a sanctions motion against VSI that contained a fraudulent and altered exhibit and misrepresentations by counsel regarding the same –over VSI's objections and notwithstanding the motion being joined as a contested matter. In another troubling move, the Bankruptcy Court forced VSI and Rembrandt to help "fix" the Trustee's failure to adequately disclose the assets being sold pursuant to the 363 sale by annotating a late-filed and deficient asset listing.

The Trustee chose "the Secured Creditors," *a.k.a.,* the Hawk Parties, as the proposed stalking horse bidder and acquiesced to allowing their claim of $180 million (Sale Motion ¶ 30(I)(a)), $150 million to be used as a credit bid (Sale Motion ¶ 30(I)(b)), despite the dubious nature and amount of the Hawk Parties' claims and the Trustee's failure to investigate the conversion of the Hawk Parties' notes pursuant to a debt-to-equity conversion agreement the Trustee was well aware of.

The Petitioners have repeatedly emphasized that allowing such credit bid was inappropriate on its face. The insider stalking horse bidder should not have been permitted to credit bid in light of the history, facts and circumstances of these cases, the disputes surrounding the legitimacy of its claims, and – most importantly – the stalking horse's theft and control of the Debtors' assets before and during the pendency of this bankruptcy case. Designating such a malevolent insider as the stalking horse is wholly inequitable to legitimate creditors and constitutes "cause"

11

to deny credit bidding rights. Additionally, in these Chapter 11 cases, the credit bid also inevitably chilled bidding, rather than providing any value to the estates, which Courts have found to be cause enough to deny the right to credit bid.

At the hearing to approve the bidding procedures on November 13, 2024, the Bankruptcy Court did not hear testimony or receive other evidence in support of the Trustee's proposed bidding procedures, and the Trustee never filed nor otherwise offered evidence to buttress or rationalize the relief sought in his Bidding Procedures Order (defined below).  Indeed, the hearing to approve the Trustee's proposed bidding procedures was not an evidentiary hearing at all.[6]  Rather, at the close of the hearing the Court informed the Petitioners and other parties in interest that the sale hearing to be held on December 4, 2024 to approve the sale transaction would be their opportunity to make their cases. *See* November 13, 2024 Hearing Transcript, Attached hereto as **Exhibit C** 83:12-18 ("THE COURT: Okay. So I'll hear from all of you. Just make sure you put in those briefs. My law clerk is waiting with baited breath to see all of your sale objections because he's got to do a lot of research. So next Friday, okay. We'll be taking a close look at all of that. So please include all of your arguments then"). Notwithstanding the lack of an evidentiary hearing and the absence of any evidentiary support of any kind from the Trustee, the proposed order

---

[6] See generally the November 13, 2024 Bidding Procedures hearing transcript, attached hereto as **Exhibit C**.

79079341;4

approving the bidding procedures (the "**Bidding Procedures Order**")[7], was signed by the Bankruptcy Court and granted exceptional, unsupported, and unwarranted findings and relief that included:

     i.   findings that "the Trustee has articulated good and sufficient reasons for authorizing the Bidding Procedures," that such procedures "are fair, reasonable, and appropriate  under the circumstances and designed to maximize value of the Assets" (Bidding Procedures Order ⁋ B);

    ii.   a finding that "the Bidding Procedures were negotiated in good faith and at arm's length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets" (Bidding Procedures Order ⁋ B);

   iii.   a finding that the Asset Purchase Agreement "was negotiated in good faith an at arm's length between the parties and may serve as a reasonable and appropriate baseline for soliciting other bids for the Assets" (Bidding Procedures Order ⁋ C); and

   iv.   ordering related relief that "the Trustee shall have no personal liability for any obligations of the Debtors' estates" (Bidding Procedures Order ⁋ 21), and that "notwithstanding Bankruptcy Rule 6004(h), the terms

---

[7] As entered at Docket No. 811.

13

and conditions of this Order are immediately effective and enforceable upon its entry" (Bidding Procedures Order ¶ 23).

Mysteriously, the Bankruptcy Court was able to make all of the foregoing findings of fact and conclusions of law and issue the sweeping relief contained in the Bidding Procedures Order without a single piece of evidence. If the November 13, 2024 Bidding Procedures hearing met the legal standard for conducting an evidentiary hearing for a contested matter in satisfaction of the Federal Rules and due process requirements, then it is fair to say that we bankruptcy practitioners have no standard at all.

At the ensuing hearing, on December 4, 2024, VSI and Rembrandt, came prepared to present their witnesses and arguments in accordance with the Bankruptcy Court's promise that the sale hearing would be their opportunity to present their case in chief. However, the Bankruptcy Court denied VSI and Rembrandt this opportunity. First, the Bankruptcy Court severely limited and then curtailed Petitioners cross-examination of the only two witnesses offered by the Trustee in support of his Sale Motion – the Trustee himself and his investment banker at SSG (defined below).[8] Thereafter, the Court denied VSI and Rembrandt the right to put on witnesses or other evidence in support of their case in chief.[9]

---

[8] *See* December 4, 2024 Sale Hearing Transcript, attached hereto as **Exhibit B**, 22:25, 23:14.
[9] *See* December 4, 2024 Sale Hearing Transcript, attached hereto as **Exhibit B**, 74:6, 75:13, 76:15-19.

14

Finally, the Court cut the hearing off without the opportunity for any oral argument, suggesting that "she had heard all she needed to hear" and would read the briefs. *See e.g.* December 4, 2024 Hearing Transcript, attached hereto as **Exhibit B** 50:5-9 ("Okay. And I don't need to hear from that witness today, and I'm not going to hear from him today. I'm happy to hear all the arguments that you've listed in your briefs, but I'm not taking testimony from that gentleman. I don't need that for part of the sale process."); *Id.* 74:13-20 ("I don't have any need to hear from any witnesses about the sale. What I was interested -- if there were any concerns. Like, the concerns I was interested in hearing about today was the sale process, . . . And I've heard all of your questions, and I don't have any concerns about this sale. I don't.").

This "sale hearing" failed to meet the standard for an "evidentiary hearing" or afford VSI and Rembrandt any material due process.  The Court constricted cross-examination of the Trustee's only two witnesses in such a manner as to deny any meaningful exposure of the most important facts underlying the proposed sale (i.e. "free and clear" transfer, and "good faith purchaser" status) – and the relief sought most by the Trustee and Proposed Purchaser.

Moreover, at the same December 4, 2024 hearing, the Bankruptcy Court permitted the Trustee to file a materially different form of Sale Order (which modified the "deal terms" originally set forth in the 9019 Agreement) less than three

hours before the hearing without opportunity for sufficient review, let alone adequate opposition or discovery.

Entering the proposed sale order that permits the transfer of non-estate property "free and clear" of liens, claims, and encumbrances and confers "good faith purchaser" status on the stalking horse bidder without an evidentiary record permitting the Court to grant such relief is clearly problematic – indeed, it is fatal to the requested relief. The only evidence the Trustee submitted in support of his requested sale order relief were two declarations (one from the Trustee and one from SSG Advisors, LLC ("*SSG*") as investment banker), and neither established any facts in support of (i) free and clear transfer or (ii) good faith purchaser status. As noted above, no material cross-examination was permitted by the Court. Also as noted above, the Bankruptcy Court denied VSI's and Rembrandt's request to put on evidence to contest the "free and clear" and "good faith" findings.

There have been numerous instances in the Chapter 11 Proceedings in which the Bankruptcy Court took problematic actions and entered problematic orders, as described above, including with respect to the Bankruptcy Court's repeated refusal to permit Petitioners' reasonable discovery. On June 16, 2024, Akerman LLP filed a Notice of Appearance as counsel for VSI and promptly filed an Objection to the Motion for Turnover [ECF No. 672 in the Bankruptcy Court Proceedings] (the "**Objection to Turnover**") and a Motion to Reconsider the order granting the

9019 Agreement [ECF No. 686 in the Bankruptcy Court Proceedings] (the "**Motion to Reconsider**").

On July 26, 2024, VSI filed and served a Notice of Deposition Duces Tecum on the Trustee concerning the issues raised in the Objection to Turnover and Motion to Reconsider (the "**Original Discovery Requests**"). Among other things, the Original Discovery Requests sought information regarding exhibits to the Trustee's Motion for Turnover that were clearly altered and representations that were demonstrably false and misleading. Rather than account for the altered exhibit documents and misleading statements in his Motion for Turnover, the Trustee moved to quash the Original Discovery Requests, sought entry of a protective order, and moved to withdraw the offensive Motion for Turnover without prejudice [see ECF No. 724 in the Bankruptcy Court Proceedings].

On September 30, 2024, the Bankruptcy Court entered the *Order Granting Motion to Withdraw Turnover Action* [ECF No. 776 in the Bankruptcy Court Proceedings]. The same day, the Bankruptcy Court entered the *Order Granting Motion to Quash* [ECF No. 777 in the Bankruptcy Court Proceedings]. More recently, at the hearing on November 14, 2024, the Bankruptcy Court entered an order [ECF No. 805 in the Bankruptcy Court Proceedings] denying the reconsideration motion and granting the motion to quash remaining discovery, including discovery relating to the sale process. Effectively, taken together, these

79079341;4

orders have completely denied Petitioners any form of discovery whatsoever, including with respect to the all-important sale process.

Taken together, these orders by the Bankruptcy Court quashed discovery regarding: (i) the 9019 Agreement reconsideration; (ii) the Debtors' engagement of conflicted investment banker, SSG; (iii) the Trustee's failure to enforce the TRO or return assets to the Debtors' estates; (iv) the bid procedures; and most recently, the Trustee's proposed 363 Sale, including but not limited to: (a) assets recovered to the estate, (b) intellectual property assets, (c) bonding machine title, and efforts to control subsidiaries and assets purportedly held there.

## STANDARD OF REVIEW

The All Writs Act permits this Court to "issue all writs necessary or appropriate in aid of" its jurisdiction, including mandamus and prohibition. 28 U.S.C. § 1651(a).

Mandamus relief is warranted when (1) the "right to issuance of the writ is clear and indisputable"; (2) the petitioner has "no other adequate means" of obtaining relief; and (3) "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.,* 542 U.S. 367, 381 (2004) (quotation omitted). Those requirements, "however demanding, are not insuperable." *Id.*

Indeed, the Supreme Court has recognized that mandamus is properly employed to "confine an inferior court to a lawful exercise of its prescribed

jurisdiction or to compel it to exercise its authority when it is its duty to do so."
*Roche,* 319 U.S. at 26. Mandamus may also be used to address "basic" and
"undecided" legal questions where district courts are "deeply split on the answer."
*In re Micron Tech., Inc.,* 875 F.3d 1091, 1095 (Fed. Cir. 2017) (citing *Schlagenhauf
v. Holder,* 379 U.S. 104, 110 (1964)); *In re BigCommerce, Inc.,* 890 F.3d 978, 981
(Fed. Cir. 2018) ("[M]andamus may be appropriate 'to further supervisory or
instructional goals where issues are unsettled and important.'")

Section 363(b)(1) of the Bankruptcy Code provides in relevant part that "[t]he
trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary
course of business, property of the estate." Courts generally apply some form of a
business judgment test in determining whether to approve a proposed use, sale, or
lease of estate property under section 363(b)(1). *See ASARCO, Inc. v. Elliott Mgmt.
(In re ASARCO, L.L.C.),* 650 F.3d 593, 601 (5th Cir. 2011); *In re Stearns Holdings,
LLC,* 607 B.R. 781, 792 (Bankr. S.D.N.Y. 2019); *In re Friedman's, Inc.*, 336 B.R.
891, 895 (Bankr. S.D. Ga. 2005); *see generally* Collier on Bankruptcy ("Collier")
¶ 363.02 (16th ed. 2020).

Section 363(f) of the Bankruptcy Code authorizes a trustee or DIP to sell
property "free and clear of any interest in such property of an entity other than the
estate," but only if: (1) applicable non-bankruptcy law permits sale of such property
free and clear of such interest; (2) such entity consents; (3) such interest is a lien and

the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f).

Here, these elements are clearly not met. As a primary matter, and as discussed at length below, a debtor (or in this case, the Trustee), cannot sell property unless that property constitutes property of the debtor's bankruptcy estate and, before approving a sale, the bankruptcy court must determine whether the property the debtor proposes to sell constitutes property of the estate – *in an adversary proceeding, not a contested matter*. *In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008) (citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001)). In addition, it is not contested that Rembrandt's intellectual property clearly does not constitute property of the estates.

The case law is clear that the Bankruptcy Court lacks jurisdiction here because (a) it cannot authorize the sale of non-debtor property at all (let alone "free and clear") (See III.A.1 herein), and (b) the Court cannot make a factual determination about "the assets" (estate and non-debtor assets) without any evidence, and as discussed herein at length, the Bankruptcy Court has not attempted to get such evidence or permitted the Petitioners to put on such evidence.

79079341;4

Historically, Section 363(m) of the Bankruptcy Code limits appellate jurisdiction over an unstayed sale order issued by a bankruptcy court to the narrow issue of whether the property was sold to a good faith purchaser. 11 U.S.C. § 363(m); *Contratian Funds LLC v. Aretex LLC (In re WestPoint Stevens, Inc.),* 600 F.3d 231, 247–48 (2d Cir.2010); *Licensing by Paolo, Inc. v. Sinatra (In re Gucci),* 105 F.3d 837, 839 (2d Cir.) ("*Gucci I*"), *cert. denied,* 520 U.S. 1196, 117 S.Ct. 1552, 1553, 137 L.Ed.2d 701 (1997); *see also United States v. Salerno,* 932 F.2d 117, 123 (2d Cir.1991); *See Made in Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made in Detroit, Inc. (In re Made in Detroit, Inc.)*, 414 F.3d 576 (6th Cir. 2005); *see also In re Palmer Equip., LLC*, 623 B.R. 804, 808 (Bankr. D. Utah 2020) (section 363(m)'s protection is vital to encouraging buyers to purchase the debtor's property and thus ensuring that adequate sources of financing are available).

The Third Circuit, has further held that an appeal is not moot as long as it is possible to grant effective relief without impacting the validity of the sale. *See In re ICL Holding Co., Inc.*, 802 F.3d 547, 554 (3d Cir. 2015) (section 363(m) did not moot the government's appeal of the terms for the ordered distribution of escrowed funds for administrative expenses and settlement proceeds from the sale of substantially all of the debtors' assets since the court could order redistribution of the sale proceeds without disturbing the sale); *see also In re 388 Route 22 Readington Holdings, LLC*, 2021 WL 4811409, *2 (3d Cir. Oct. 15, 2021) ("Put

21

simply, § 363(m) moots a challenge to a sale when '(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease.'") (citations omitted), *cert. denied*, 142 S. Ct. 1674 (U.S. 2022); *In re K & D Indus. Servs. Holding Co., Inc.*, 850 F. App'x 966, 968-69 (6th Cir. 2021) ("Because § 363(m) 'limits appellate review of a consummated sale … regardless of the merits of legal arguments raised against it,' and because we cannot grant effective relief without disturbing the sales, the appeals to the district court are moot.") (citation omitted).

Under Third Circuit case law, § 363(m) moots a challenge to a sale if two conditions are satisfied: "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease; and "an additional step because we are first required to ask whether the purchaser at the sale 'purchased ... [the] property in good faith" *Pursuit Capital Mgmt. Fund 1 v. Burtch (In re Pursuit Capital Mgmt. LLC)*, 874 F.3d 124 (3d Cir. 2017).

Here, the purchaser clearly did not purchase the property in good faith, and the Petitioner was denied the chance to put on evidence to that effect, in violation of its rights to due process.

79079341;4

## I.    <u>A WRIT OF MANDAMUS SHOULD ISSUE</u>

The Bankruptcy Court was clearly erroneous. The Bankruptcy Court failed to make a finding of good faith, and refused to entertain any evidence demonstrating the absence of good faith, despite manifest examples in the record and Petitioners repeated efforts to raise this concern at every turn. Indeed, in *Visual Semiconductor, Inc.'s Objection to Motion of William Homony in His Capacity as Chapter 11 Trustee for an Order Approving (A) the Sale of the Debtors' Assets Free and Clear Of All Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto and (C) Granting Related Relief* [Docket No. 815 in the Bankruptcy Court Case] (the **"VSI Sale Objection"**), VSI laid out this very issue for the court:

> Section 363(m) articulates the "good faith" requirement of a Section 363 asset sale. *Abbotts Dairies*, 788 F.2d at 149–50. A court may not find good faith if fraud, collusion or unfair advantages are determined. *Id.* at 147. A good faith purchaser under the Bankruptcy Code is one who purchases assets for value, in good faith, and without notice of adverse claims. *Abbotts Dairies*, 788 F.2d at 147. In determining whether an asset purchaser is entitled to such protections, courts examine "the integrity of his conduct in the course of the sale proceedings." *Abbotts Dairies*, 788 F.2d at 148. In assessing the good faith of a purchaser, courts have considered factors such as: (1) whether the sale was negotiated at arm's length; (2) whether any officer or director of the debtor holds any interest in or is otherwise related to the potential purchaser; and (3) whether fraud or collusion exists among the prospective purchaser, any other bidders or the trustee. See Abbotts Dairies, 788 F.2d at 147-48. Ironically, the Sale Motion relies heavily on *Abbott Dairies* and cites the types of misconduct that would destroy a purchaser's good faith status. *Sale Motion* ℙ 64.

The Stalking Horse Bidder, with the Trustee's blessing, has misappropriated the estates assets, availed itself of material nonpublic information, denied prospective bidders material information necessary to make an informed assessment and decision regarding the assets vale, and improperly suppressed the assets value; and intentionally chilled the market and bidding for the Debtors' assets.

SeeCubic and the Hawk Parties would fail this test at every level: (1) the sale was not negotiated at arm's length, made particularly evident by SGG's historical relationship with Hawk; (2) Stastney, as chief executive of the SeeCubic as the Stalking Horse Bidder is also the sole director of the Debtors' R&D subsidiary; and (3) as discussed throughout the Declaration and this Objection, there has been collusion between the Trustee and the proposed Stalking Horse Bidder throughout this process.

For the reasons already discussed herein, any acquisition of the Debtors' assets by SeeCubic and Hawk is not in good faith and should not be afforded the protections of section 363(m) of the Bankruptcy Code.

VSI Sale Objection, ¶73-77.

In reviewing the applicability of section 363(m) to a sale of property of the debtor's estate, the question of whether the Hawk Parties are a good faith purchaser is a mixed question of law and fact. See *In re Abbotts Dairies of Pennsylvania, Inc.* 788 F.2d 143, 147 (3d Cir. 1986) (stating standard of review regarding "the question of whether [purchaser] was a good faith purchaser . . . is mixed").

Section 363(m) reads in relevant part:

The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

79079341;4

11 U.S.C. § 363(m) (emphasis added). Section 363(m) renders moot any appeal of an order approving sale of property to a good faith purchaser if "(1) the underlying sale or lease was not stayed pending the appeal, and (2) the court, if reversing or modifying the authorization to sell or lease, would be affecting the validity of such a sale or lease." *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 499 (3d Cir. 1998).

Under section 363(m), a sale of assets may not be reversed or modified if the property was sold to an "entity that purchased . . . [the] property in good faith." 11 U.S.C. § 363(m). Even if a party fails to obtain a stay of a sale order, that party may still challenge the sale on the grounds that the entity who purchased the property did not do so in good faith. See, e.g., *In re Filtercorp Partners, L.P.*, 163 F.3d 570, 576-77 (9th Cir. 1998); *In re Colony Hill Assocs.*, 111 F.3d 269, 272 (2d Cir. 1997). "'The requirement that a purchaser act in good faith . . . speaks to the integ-rity of his conduct in the course of the sale proceedings." Id. (*quoting In re Rock Industry Machine Corporation*, 572 F.2d 1195, 1197 (7th Cir. 1978).

Because "neither the Bankruptcy Code nor the Bankruptcy Rules attempt to define `good faith[,]' [c]ourts applying section 363(m) . . . have . . . turned to traditional equitable principles, holding that the phrase encompasses one who purchases in `good faith' and for `value.'" *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986). The Third Circuit has determined that, in

25

reviewing the "good faith" of a purchaser, the court must first "determine whether there was any impermissible collusion between the purchaser and the debtor." *Id*. at 151. If there was such collusion, the court "should then determine whether the purchaser paid "value" for the assets purchased." *Id*. Finally, "if the court determines that [the purchaser] did not pay `value,' it [must] . . . determine whether it has the power to undo the sale to [the purchaser]." *Id*.

It is clear that the Proposed Purchaser – directly or through its Chairman and CEO, Shadron L. Stastney, as an individual – has held wrongful possession and exercised control over the Debtors' assets for more than 4 years. SeeCubic (a) seized those assets prior and pursuant to a settlement agreement[10] that was found to be void *ab initio* by the Delaware Supreme Court[11]; (b) retained all significant assets on remand to the Delaware Chancery Court, despite multiple court orders[12], arguing that it should not have to return them because the assets had been improved while in SeeCubic's wrongful possession[13]; (c) retained computer servers in Silicon Valley that stored not only Stream's valuable source code, but the intellectual property of Philips and Rembrandt as well[14]; (d) controlled all aspects of the Debtors' technology in the Netherlands by installing SeeCubic CEO Stastney as director of

---

[10] See 11/22/24 Robertson Declaration at ¶¶ 12, 15-16, 18, 105-106, 111-114, and 117.
[11] See 11/22/24 Robertson Declaration at ¶ 21.
[12] See 11/22/24 Robertson Declaration at ¶¶ 24-25 and 28-30.
[13] See 11/22/24 Robertson Declaration at ¶ 28.
[14] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶¶ 27 and 96-102. See also 12/4/24 Hsu Declaration at ¶¶ 3-4.

the Debtors' three Dutch subsidiaries[15]; and (e) executed an improper return of Stream's most valuable tangible asset, the optical bonding equipment, by transferring possession to a non-debtor subsidiary which – under the control of SeeCubic CEO Stastney – refused to surrender the property to Stream during the pendency of these Bankruptcy Cases[16].

SeeCubic attempted to sell the Debtors' assets rather than return them to the Debtors, engaging an investment banker to conduct a UCC Article 9 sale of the assets. The sale was stopped only by injunctive relief and a subsequent status quo order[17].

SeeCubic was found in contempt of court[18] for returning the shares of Technovative stock to Stream while simultaneously coordinating with Stream's secured lender to seize immediate control by appointing SeeCubic CEO Stastney director of Technovative through purported proxy rights, violating the spirit of the Chancery Court's order that Stream was entitled to possess its assets and recommence business in an effort to satisfy its creditors.

---

[15] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶¶ 45, 47-52, 54, and 103.
[16] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶¶ 59 and 86-87.
[17] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶¶ 23-24 and 37.
[18] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶¶ 31-32 and 92.

79079341;4

SeeCubic exercised influence wherever possible to ensure that the Debtors' technology was used to develop SeeCubic customer relationships in competition with, and to the detriment of, the Debtors.[19]

SeeCubic attempted to register a trademark belonging the Debtors during the pendency of these Bankruptcy Cases, and even during the pendency of the Adversary Case[20].

Despite a Bankruptcy TRO in effect since January 4, 2024 and extended on multiple occasions – most recently until January 13, 2025[21] – SeeCubic continuously and publicly maintained six public websites stating that SeeCubic is the owner of the Debtors' technology[22].

As described above, there are many reasons why the Proposed Purchaser cannot receive "good faith" purchaser status. But the absence of any evidence at all in support of a "good faith" designation rings the death nell to conferring such relief:

i.   There was no evidence of "good faith" offered by the Trustee or Proposed Purchaser at the December 4, 2024 sale hearing;

ii.  There was no evidence of "good faith" offered by the Trustee or Proposed Purchaser at the November 13, 2024 hearing on the bid procedures (because it was not an evidentiary hearing, and nothing was submitted by any party in support of a "good faith" finding);

---

[19] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶¶ 38, 51, and 61.
[20] See Adversary Case 23-00057-amc, Debtors' Exhibit 71. See also **Exhibit E**, 11/27/23 Hearing Transcript at 53:1-57:18.
[21] Adversary Case 23-00057-amc, ECF 157.
[22] See **Exhibit D,** 11/22/24 Robertson Declaration at ¶ 107.

79079341;4

iii.   The order entered by the Bankruptcy Court approving the bid procedures was entered without any evidence, and nevertheless made "good faith" findings regarding the proposed sale transaction;

iv.   As described herein, SeeCubic, Inc., Shadron Stastney, and Hawk have all engaged in TRO violations, stay violations, and other inequitable conduct making them ineligible for "good faith" purchaser status;

v.   Stastney & SeeCubic, Inc. misappropriated and systematically exercised dominion and control over the Debtors' assets, and thus the "transfer" of assets occurring through the proposed 363 sale is simply a transfer of title.[23]

The Bankruptcy Court failed to examine whether or not the Proposed Purchaser was a "good faith" purchaser, despite clear evidence that the Proposed Purchaser was not, and over repeated cries from Petitioners to do so. Thus, the Bankruptcy Court was clearly erroneous.

In addition to the above defects with respect to "good faith" purchaser status, there are extensive defects regarding section 363(f) of the Bankruptcy Code, namely that the assets cannot be sold "free and clear". As an initial matter, in the asset purchase agreement proposed by the Trustee, the Trustee proposes to sell all assets of the Debtors' estates (with minor exceptions), but then ignores the fact that Rembrandt's property is embedded within the StreamTV estate property he purports

---

[23] Stastney, SeeCubic, and Hawk failed to testify or otherwise submit evidence of good faith. The Bankruptcy Court denied any and all efforts to adduce evidence regarding SeeCubic and Stastney's bad faith. The Bankruptcy Court Proceeding record establishes that there is cause to believe that Stastney, SeeCubic, Inc., and Hawk engaged in conduct that (i) violated applicable DE state court orders, (ii) violated the automatic stay, (iii) violated the Bankruptcy Court's December 2023 World-wide Stay, and (iv) violated the Bankruptcy Court's TRO with respect to StreamTV estate property.

to sell – this is illegal, contrary to controlling legal authority[24], and does not qualify under any of the statutory sections set forth in 363(f). Further, the Trustee has offered no evidence that such proposed 363(f)[25] sale qualifies under any of that Code section's statutory provisions: (i) there was no evidence in either the Trustee's declaration or the investment banker's declaration that the assets being sold as part of the 363 sale were property of the Debtors' estates and had no encumbrances by any other party (such as trade secrets and patent licensors, Rembrandt or Philips); and (ii) there was no evidence at the December 4, 2024 sale hearing that the Trustee had any meaningful understanding of the Debtors' assets that the Trustee was purporting to "sell", let alone an understanding for how those assets may be encumbered. Indeed, the limited cross-examination opportunity afforded by the Court demonstrated that the Trustee was not aware of and did not investigate assets in California that were being transferred despite containing non-estate property (specifically Rembrandt's trade secrets and other IP contained within the StreamTV production code housed on the California-based servers).[26] Moreover, the limited cross-examination established that the Trustee falsely asserts that the only asset

---

[24] *See e.g. In re Whitehall Jewelers Holdings, Inc.,* Case No. 08-11261 (KG), 2008 WL 2951974 (Bankr. D. Del. July 28, 2008); *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin),* 2008 WL 2498048(3d Cir. June 24, 2008)

[25] Section 363(f) of the Bankruptcy Code authorizes a trustee or DIP to sell property "free and clear of any interest in such property of an entity other than the estate," but only if: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in *bona fide* dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f). As discussed herein, none of these elements are met.

[26] See December 4. 2024 hearing transcript page 38, line 3 – 7.

being transferred by StreamTV is the bonding machine (notwithstanding evidence that SeeCubic, Inc. and Shad Stastney previously stole and continue to possess property of the estate (e.g. TVs, tablets, and source code).[27] [28]

## II.    A WRIT OF PROHIBITION SHOULD ISSUE.

The requirements for a writ of prohibition are similar to those for mandamus. A Writ of Prohibition involves a proceeding between an inferior court and a superior court, as a result of which the superior court exercises control to prevent the inferior court from exceeding the limits of its powers and jurisdiction." *Yohn,* 76 F.3d at 521. *Title 42 Pa.R.A.P. Rule 3307* outlines the method by which a party seeking a writ of prohibition must comply.  In order for the Writ of Prohibition to be granted, the party seeking such relief must satisfy a two-pronged test established in *Carpentertown Coal and Coke Co., et. al. v. Laird,* 61 A.2d 426 (Pa. 1948). First, there must be no adequate remedy at law; second, there must be extreme necessity for the relief requested to secure an order and regularity in the judicial process. *Larsen v. Kaufman,* 579 A.2d 1302, 1307 (Pa. 1990), citing *Carpentertown, supra.* These elements are clearly met here, for the reasons discussed below.

A petitioner seeking a writ of prohibition must demonstrate that: "(1) no other adequate means exist to attain the relief [s]he desires, (2) the party's right to issuance

---

[27] See December 4. 2024 hearing transcript page 28, line 9 – 18
[28] See 11/22/24 Robertson Declaration attached hereto as **Exhibit D**, at ¶¶ 12, 15-16, 18, 105-106, 111-114, and 117.

31

of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." *Hollingsworth v. Perry*, 558 U.S. 183, 190, 130 S.Ct. 705, 175 L.Ed.2d 657 (2010) (internal quotations omitted).

A court may issue a writ of prohibition where a lower court has "assumed jurisdiction of a matter beyond its legal cognizance." *Smith v. Whitney*, 116 U.S. 167, 176, 29 L. Ed. 601, 6 S. Ct. 570, 574 (1886). The writ should not be issued when the plaintiff has an adequate alternative remedy. *See In re Centrotextil*, 620 F.2d 690, 691 (8th Cir. 1980). The writ of prohibition, like the writ of mandamus, is an extraordinary writ, and the power to issue it should be "sparingly exercised." *See Parr v. United States*, 351 U.S. 513, 520, 100 L. Ed. 1377, 76 S. Ct. 912, 916(1956). Stated differently, a writ of prohibition may be issued to (i) prevent a lower court from interfering with the higher court's determination of a case pending appeal, (ii) prohibit a lower court from issuing orders in matters over which the lower court has no jurisdiction.

The case at bar is clearly a good candidate for the writ of prohibition: First, if the District Court issues the relief requested herein with respect to the stay pending appeal, then the District Court will hear Petitioners' arguments as described herein, and thus the Bankruptcy Court should be prohibited from entering the Sale Order. This is simply intuitive, as one proceeding should bar the other.

79079341;4

Further, as described herein at length, the Bankruptcy Court does not have the authority to authorize the transfer of assets that do not constitute property of the estate under section 541 of the Bankruptcy Code. A writ of prohibition is appropriate when "the proceedings of any tribunal, corporation, board or person exercising judicial functions. . . . are without or in excess of the jurisdiction of such tribunal, corporation, board or person." *Alper v. Eighth Judicial Dist. Court of Nev.*, 131 Nev. 430, 433, 352 P.3d 28, 30 (2015); *Lawrence v. United States Bankr. Court,* 153 F. App'x 552, 554 (11th Cir. 2005) (A writ of prohibition "affords an expeditious and effective means of confining an inferior court to a lawful exercise of its prescribed jurisdiction or compelling a court to exercise its authority"); *Williams v. Minnesota*, No. 24-cv-2548 (NEB/DJF), 2024 U.S. Dist. LEXIS 181871, at *2 (D. Minn. Aug. 8, 2024), citing *State of Missouri v. United States Bankruptcy Court for the E.D. of Ark.*, 647 F.2d 768, 770 n.3 (8th Cir. 1981) (citing *Ex Parte Republic of Peru*, 318 U.S. 578, 583, 63 S. Ct. 793, 87 L. Ed. 1014 (1943)). Specifically here, the Bankruptcy Court does not possess the authority to transfer Rembrandt's intellectual property (trade secrets and patent-protected technology) embedded in the Debtors' source code, production code, and other physical assets (e.g. TVs, tablets, phones, and computer servers).

As described at length herein and in Petitioners' pleadings, a debtor (or in this case, the Trustee), may not sell property unless that property constitutes property of

79079341;4

the debtor's bankruptcy estate and, before approving a sale, the bankruptcy court must *first* determine whether the property the debtor proposes to sell constitutes property of the estate. *In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008) (citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001)).  Moreover, the Bankruptcy Court could not determine whether the assets he plans to sell are (i) property of the estate or (ii) Rembrandt's intellectual property incorporated into the  Debtor's technology through a simple contested matter (such as the contested Sale Motion). Rather that determination requires an adversary proceeding in order to afford the third-party non-debtor the full panoply of due process rights *in advance* of depriving them of their property through a court-ordered 363 sale.  See *Id.* (citing *In re SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin)* 2008 WL 2498048 (3d Cir. June 24, 2008) at *12).  Accordingly, legal precedent, due process, and fundamental fairness militate against permitting the Bankruptcy Court to enter the Sale Order, particularly upon the paucity of evidence on the record and in support of the Trustee's order.

## III.    THE COURT SHOULD STAY THE SALE ORDER PENDING APPEAL.

Ordinarily, a motion requesting a stay must be made in the bankruptcy court (Fed. R. Bankr. P. 8007(a)(1)). The movant may bypass the bankruptcy court only if "moving first in the bankruptcy court would be impracticable" (Fed. R. Bankr. P.

34

79079341;4

8007(b)(2)(A)). The circumstances of this case clearly meet this standard. To make a showing of impracticability, it should be demonstrated that it "was not practicable to seek relief from the bankruptcy court" and require "a showing that . . .to be effective, relief must be immediate, and that based upon what occurred in the bankruptcy court, relief from it is improbable." *Beeman v. BGI Creditors' Liquidating Tr. (In re BGI, Inc.)*, 504 B.R. 754, 761 (S.D.N.Y. 2014) (citing 10 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 8005.11, at 10-8005 (16th ed. 2013) (quotation marks and brackets omitted)). Here, the Bankruptcy Court has made it abundantly clear that the Sale Order is to be entered imminently, which order would make relief impossible.

In considering whether to grant a stay pending appeal, courts consider the following four factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest. *See, e.g., Republic of Phil. v. Westinghouse Electric Corp.,* 949 F.2d 653, 658 (3d Cir.1991); *In re Revel AC, Inc.,* 802 F.3d 558, 565 (3d Cir. 2015); *See also Nken v. Holder*, 556 U.S. 418, 426 (2009) (same). In its decision in *Nken v. Holder,* the Supreme Court stated that the first two factors are "the most critical factors" to be considered, *Revel*, 802 F.3d at 568 (citing *Nken)*, but all four factors weigh in favor of a stay in the present case.

35

And there is a recognized hierarchy within the Supreme Court's two most critical factors. Courts "balance . . . and consider the relative strength of the four factors," while recognizing that the first factor, likelihood of success, is the most important one. *Revel*, 802 F.3d at 568. *See also* 16A Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3954 (5th ed. 2024 update) ("The four factors should be balanced; thus, for example, if the balance of harms tips heavily enough in the stay applicant's favor then the showing of likelihood of success need not be as strong, and vice versa.").

### a.    Petitioners Have a High Likelihood of Success on the Merits

Beyond the fact that the Proposed Purchaser is not a "good faith" purchaser, as discussed at length herein, there are multiple other reasons why Petitioners have a high likelihood of success on the merits for a determination that the Sale Transaction cannot go forward.

This is because (a) the Trustee may not sell the Debtors' property unless that property constitutes property of the Debtors' estates and, before approving a sale, a court must first determine whether such property constitutes property of the estates; (b) the 9019 Agreement and Sale Motion taken together constitute an improper *sub rosa* plan of reorganization that cannot be approved; and (c) the proposed sale process is neither fair nor reasonable and is subject to a heightened scrutiny standard.

79079341;4

1.    <u>The Trustee may not sell the Debtors' property unless that property constitutes property of the Debtors' estates and, before approving a sale, the Court must first determine whether such property constitutes property of the estates.</u>

The Bankruptcy Court has failed to address whether the assets were property of the estate, despite clear and plentiful evidence to the contrary. It is widely accepted, in addition to being firmly intuitive, that the Bankruptcy Code does not expand a debtor's interests in property beyond what such interests were at the petition date. *Jones v. GE Capital Mortgage Co. (In re Jones)*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) ("[T]he owner of an insurance policy cannot obtain greater rights to the proceeds of that policy than he would have under state law by merely filing a bankruptcy petition") (*citing First Fid. Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir. 1993)); *See also Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984) ("[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy -- no more, no less."), cert denied, 469 U.S. 982 (1984); *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1663, 203 L. Ed. 2d 876 (2019) (recognizing the "general bankruptcy rule [that] the estate cannot possess anything more than the debtor itself did outside bankruptcy" and that "[a] debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either.").

A debtor (or in this case, the Trustee), may not sell property unless that property constitutes property of the debtor's bankruptcy estate and, before approving

a sale, the bankruptcy court must determine whether the property the debtor proposes to sell constitutes property of the estate – *in an adversary proceeding, not a contested matter. In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008) (citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. B.A.P. 2001)).

This is Third Circuit law.[29] Bankruptcy courts have consistently made this finding. *See also Anderson v. Conine (In re Robertson)*, 203 F.3d 855 (5th Cir. 2000) (holding that Section 363(f) does not allow a trustee to sell property that is not property of the estate); *In re Worcester Country Club Acres, LLC*, 655 B.R. 41, 47 (Bankr. D. Mass. 2023) (holding that because the ownership of the land was disputed, it "must be adjudicated in order to determine if they are property of the Debtor's bankruptcy estate, they cannot be sold under § 363(b) or (c) and pursuant to § 363(f)(4) prior to a resolution of those issues."); *In re Coburn*, 250 B.R. 401, 403 (Bankr. M.D. Fla. 1999) (it was necessary to determine whether an asset was property of the estate in order to then decide whether the trustee was entitled to sell the asset pursuant to Section 363(f))); *Darby v. Zimmerman (In re Popp)*, 323 B.R. 260, 266 (B.A.P. 9th Cir.2005); *Fresh Prepared Foods, Inc. v. Farm Ridge Foods*

---

[29] *SLW Capital, LLC v. Mansaray-Ruffin (In re Mansaray-Ruffin),* 2008 WL 2498048(3d Cir. June 24, 2008) at *1. In *SLW Capital,* a debtor included a provision in the confirmed plan which invalidated a mortgage assignee's claim for a secured interest. The Third Circuit held that lien invalidation can occur only through litigation in an adversary proceeding which provides greater procedural protection and, therefore "the adversary proceeding Rule at issue here is mandatory and establishes a right to specific process that must be afforded. Its mandatory nature is grounded in principles of due process that trump `finality.'" *Id.* at *6.

*LLC*, 2013 WL 4804816, at *3 (D.N.J. Sept. 9, 2013) ("it is well-settled that a 'bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property"). A sale under Section 363 "cannot be had when there is an unresolved issue of whether the subject property is 'property of the estate' . . . ." *In re Interiors of Yesterday, LLC*, Case No. 02-30356 (LMW) , 2007 WL 419646 (Bankr. D. Conn. Feb. 2, 2007). *See also Warnick v. Yassian (In re Rodeo Canon Dev. Corp.)*, 362 F.3d 603, 605–06 (9th Cir. 2004), withdrawn and modified by 126 Fed. App'x 353 (9th Cir. 2005) (this Court "may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owned the property."); *Ross v. A V Car & Home, LLC (In re Brown)*, Case No. 16-00466, A.P. No. 18-10026, 2019 Bankr. LEXIS 286, 2019 WL 413625, at *3 (Bankr. D.C. Jan. 30, 2019) (court may not authorize sale of property where ownership of a portion of the property is in dispute).

Further, it is the trustee who bears the burden of establishing that the property to be sold is property of the estate under Section 363(b). *See, e.g., In re Whitehall Jewelers Holdings, Inc.*, 2008 WL 2951974, at *17 (Bankr. D. Del. July 28, 2008) (holding that the debtors failed to meet their burden of establishing that the assets were property of the estate, and therefore were not permitted to sell the goods under Section 363(f)(4)).

The Trustee has not even attempted to meet that burden: In the December 4, 2024 hearing on the Sale Motion, VSI repeatedly asked the Trustee whether an extensive inventory had ever been conducted regarding the Debtors' assets and those that might belong to VSI.  The Trustee provided vague responses (*See e.g.* Hearing Transcript December 4, 2024 25:5-13 (Q: Did you ever do an inventory of the assets of Stream TV? A: Well, that was one of the issues in the case that is not typical in a Chapter 11 Trustee case. There were no operations and it was unclear at the time, and remains unclear, exactly which entities of Mr. Rajan's have possession of tangible assets, records, et cetera. So I don't believe Stream TV has certainly any significant tangible assets. And if they do, I  have not been aware -- made aware of them or know their location or who is in control of them.")). The Trustee mischaracterizes "*as is, where is*" to absolve himself of his obligations to the estate. "As is, where is" describes the assets condition, not the estate's title or the Trustee's authority to convey.

The Bankruptcy Court also failed to address whether the assets were property of the estate, despite clear evidence to the contrary. In fact, it is evident that, as described herein, the trustee is attempting to sell the assets on an "as-is, where-is" basis, without understanding (i) where a significant portion of the Debtors' assets are located, (ii) which of the Debtors' trade secrets the Hawk Parties have used and continue to use, (iii) if the Hawk Parties will turn over the Debtors' property to a

40

successful bidder other than the stalking horse, and (iv) if the Hawk Parties will stop using the trade secrets once a sale to the Proposed Purchaser has been completed.

Despite all the evidence to the contrary, the Bankruptcy Court failed to properly address whether the property is that of the Debtors' estates under section 541 of the Bankruptcy Code.  In fact, faced with this issue at the December 4, 2024 hearing,  , the Bankruptcy Court repeatedly stated that the inquiry was not "relevant." *See e.g.* Hearing Transcript December 4, 2024 38:3-24 (when cross-examining the Trustee about certain critical Debtor software assets (i.e. Stream production code embedded with Rembrandt source code house on servers in California), the Court interjected "Well, who cares? All that we care about are assets now. All right?" and went on to declare "you're talking about some servers from California.  I don't really understand how its relevant." Hearing Transcript December 4, 2024 40:10-12).

        2.    <u>The 9019 Agreement and Sale Motion taken together constitute an improper *sub rosa* plan of reorganization that cannot be approved by this Court.</u>

Further, it is evident that the sale transaction contemplated by the Sale Motion is sale that cannot be approved, as it clearly constitutes an impermissible *sub rosa* plan of reorganization that strips the Debtors' creditors of the protections of the Bankruptcy Code and improperly attempts to extinguish their rights without their consent.

79079341;4

When a sale process and/or settlement in bankruptcy has the ultimate effect of dictating the terms of any future reorganization plan, the bankruptcy court must deem the transaction impermissible because it short circuits the requirements of Chapter 11 by establishing the terms of the plan *sub rosa* in connection with a sale of assets. "The hallmark of such a plan is that it dictates the terms of a reorganization plan." E*nergy Future Holdings Corp. v. Del. Tr. Co*., 648 F. App'x 277 (3d Cir. 2016). This is because it "short circuits" the requirements of Chapter 11 by establishing the terms of the plan *sub rosa* in connection with a sale of assets. *In re Braniff Airways, Inc.*, 700 F.2d 935, 940 (5th Cir. 1983).

Thus, *sub rosa* plans are prohibited because they violate the requirements of the Chapter 11 process. *Motorola Inc. v. Official Comm. Of Unsecured Creditors and JP Morgan Chase (In re Iridium Operating LLC),* 478 F.3d 452, 466 (2d Cir. 2007); *In re Crowthers McCall Pattern, Inc.*, 114 B.R. 877, 887 (Bankr. S.D.N.Y. 1990) ("A transaction which would effect a lock-up of the terms of a plan will not be permitted."). Where a settlement circumvents creditors' rights to vote on key provisions, that settlement can be said to dictate the terms of a plan. *See Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop. by & Through Mabey (In re Cajun Elec. Power Coop.)*, 119 F.3d 349, 355 (5th Cir. 1997).

This is precisely the circumstance of this case. The terms of the proposed sale process, as outlined in the 9019 Agreement and in the Sale Motion, clearly constitute

79079341;4

a *sub rosa* plan of reorganization. Among other things, the sale seeks to improperly channel consideration to specific creditor groups – as discussed herein, the Trustee has selected the Hawk Parties as the stalking horse and agreed to give them an allowed claim of $180 million, $150 million of which may be used as a credit bid. This is blatantly at the expense of the Debtors' other creditors – pursuant to the 9019 Agreement, $7,500,000 would be carved out to pay administrative and general unsecured creditors. Notably, if a bid is accepted over the stalking horse bid, only 10% of that overbid goes to administrative or unsecured creditors until Hawk's $180 million claim is paid in full. As such, it essentially ensures that the Debtors' unsecured creditors, and perhaps even administrative expense claimants, receive pennies on the dollar. Such a restructuring of creditors' rights and diversion of value is impermissible in the context of a 363 sale. *See PBGC v. Braniff Airways, Inc. (In re Braniff Airways, Inc.)*, 700 F.2d 935, 940 (5th Cir. 1983) ("The debtor and the Bankruptcy Court should not be able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan *sub rosa* in connection with a sale of assets.").

Further, the Debtors impermissibly seek to use the 363 Sale to bind the Debtors' creditors to a treatment of their claims without having that proposed treatment tested by the standards of the Bankruptcy Code. Such a proposed sale cannot proceed. See, e.g., *In re Westpoint Stevens Inc.,* 333 B.R. 30, 52 (S.D.N.Y.

2005) ("Where it is clear that the terms of a section 363(b) sale would preempt or dictate the terms of a Chapter 11 plan, the proposed sale is beyond the scope of section 363(b) and should not be approved[.]"); *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc. (In re Cont'l Air Lines, Inc.),* 780 F.2d 1223, 1226-28 (5th Cir. 1986) (same).

Quite simply, a 363 sale is not a substitute for a plan of reorganization. *See Westpoint Stevens Inc.,* 333 B.R. at 52 (noting when a proposed transaction specifies terms for a reorganization plan, the parties and the court "must scale the hurdles erected in Chapter 11") (citation omitted); *see also In re Iridium Operating LLC,* 478 F.3d 452, 466 (2d Cir. 2007) (The "trustee is prohibited from such use, sale or lease if it would amount to a *sub rosa* plan of reorganization."); *In re Abbotts Dairies of Pa., Inc.,* 788 F.2d 143 (3d Cir. 1986) (finding that section 363 does not permit a debtor to abrogate the protections afforded creditors by section 1129 and the plan confirmation process).

The Debtors bear the burden to prove that the proposed sale is fair, equitable, in the interest of the estates, and not unfair to the creditors. The proposed sale fails each of these requirements.

3. <u>The Proposed Sale Process is Neither Fair nor Reasonable and is Subject to a Heightened Scrutiny Standard.</u>

Petitioners have been repeatedly criticized in these Chapter 11 Cases for allegedly "making noise", yet this characterization fails to acknowledge the

79079341;4

underlying frustration borne from a sense of being ignored regarding clearly fatal flaws in this sale process. The proposed buyer is an insider with a well-documented history of misconduct relating to the assets proposed to be sold.  The Bankruptcy Court has failed to address the Proposed Purchaser's insider status.

SeeCubic is certainly an insider with respect to the Debtors. Indeed, SeeCubic has exerted an inordinate amount of control over the Debtors' assets and sale process, and has time and time again violated the automatic stay and the Bankruptcy TRO in place. Control of SeeCubic rests with Stastney, who was both Vice Chairman of the Board of Directors and Chief Financial Officer of Debtor Stream shortly before he orchestrated an asset takeover with the Hawk Parties through the invalidated Omnibus Agreement. Stastney had access to the Debtors' financials, sensitive customer information, investor database, and other critical data. He siphoned key personnel from the Debtors and ultimately used the Dutch court system to install himself as director of the Debtors' R&D subsidiary, a position he uses today to exert control over the Debtors' engineering development activities. *See Robertson Declaration* ¶¶ 7, 33, 54, attached hereto as **Exhibit D**.

Transactions involving insiders are subject to a heightened level of scrutiny. *See Crown Vill. Farm, LLC v. Arl. L.L.C. (In re Crown Vill. Farm, LLC)*, 415 B.R. 86, 93 (Bankr. D. Del. 2009) (holding that "[t]he sale process will be under the close scrutiny of the Court as required where the stalking horse is an insider"); *Citicorp*

*Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997), aff'd, 160 F.3d 982 (3d Cir. 1998) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein."); *In re Bidermann Indus. U.S.A.*, 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997) (sales to insiders "are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse") (internal quotations omitted); *In re Summit Global Logistics, Inc.*, 2008 Bankr. LEXIS 896, 26-29 (Bankr. D.N.J. Mar. 26, 2008) (recognizing "the heightened scrutiny required for insider transactions"); *In re Univ. Heights Ass'n*, 2007 Bankr. LEXIS 1200, at *13 (Bankr. N.D.N.Y. Jan. 22, 2007) ("[B]ecause we are dealing with potential insiders . . . the proposed sale is subject to heightened scrutiny.").

This heightened scrutiny also applies to a sale proposed by a trustee, rather than a debtor in possession. *In re Blixseth*, No. 09-60452, 2010 Bankr. LEXIS 585 (Bankr. D. Mont. Feb. 23, 2010). In *Blixseth*, the court refused to approve a sale of property as proposed by the trustee to a secured creditor credit-bid. The court found that the creditor had "very close ties to the debtor" and refused to apply the standard applicable to non-insider sales or to give deference to the trustee's business judgment. Instead, the court applied the more rigorous *Bidermann* standard for

evaluating insider transactions. As such, the court denied the bidding procedures proposed by the trustee. In applying heightened scrutiny, courts are concerned with "the integrity and entire fairness of the transaction at issue, typically examining whether the process and price of a proposed transaction not only appear fair but are fair and whether fiduciary duties were properly taken into consideration." *In re Innkeepers USA Trust*, 442 B.R. 227, 231 (Bankr. S.D.N.Y. 2010).

This transaction would not withstand heightened scrutiny. As in *Bidermann*, SeeCubic and the Hawk Parties clearly have "very close ties" to the Trustee. As detailed herein and in the SSG Objection, the Hawk Parties have a long history of improperly possessing the Debtors' property. Indeed, to this day, the Hawk Parties are using and possessing the Debtors' property contrary to this Court's orders, specifically including the TRO that in effect through November 12, 2024. If this Court were to examine "the integrity and entire fairness of the transaction at issue" it could not reasonably conclude that this transaction was acceptable.

The Bankruptcy Court did not apply a heightened scrutiny standard in examining the transaction, and has not considered these arguments in the Bankruptcy Court Proceedings.

### b. Petitioners will Suffer Irreparable Harm if Enforcement of the Sale Order is Not Stayed Pending Appeal

Because likelihood of success - the most important of the factors - is strong, the other interests that this court must balance are less important. *Revel*, *Wright &*

*Miller*, 802 F.3d at 568.  Nevertheless, the other three factors also support a stay. Absent a stay, Petitioners will be irreparably harmed by the Sale Transaction and the related deprivation of their procedural and due process rights.

Allowing the sale process to go forward would be devastating to Petitioners. Although Section 363 of the Bankruptcy Code allows a debtor to sell its bankruptcy assets free and clear of liens and interests, that privilege exists only if certain circumstances are met. In a case with facts similar to those at bar, *In re DeCurtis Holdings LLC,* the United States Bankruptcy Court for the District of Delaware ultimately enjoined the sale and use of the assets by the debtor, finding that the sale would result in irreparable harm to the objecting entity and money damages would not compensate for the harm. *In re DeCurtis Holdings*, 2023 WL 5153645, at *22; 11 U.S.C. § 363 (f) (providing "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest"; where on a debtor's motion to sell assets pursuant to section 363 of the Bankruptcy Code, a permanent injunction was found to be appropriate to prohibit the debtor's sale, disclosure, or use of the  information incorporated into the assets because misappropriation of confidential business information could cause irreparable harm, as could violation of a restrictive covenant, loss of control over reputation, and loss of goodwill.)

Injury that "cannot be undone through monetary remedies" is irreparable. *Boggs Contracting, Inc. v. Freismuth*, 2021 U.S. Dist. LEXIS 252335, at *9 (M.D. Fla. Dec. 27, 2021). Here, the Hawk Parties' conduct caused and continues to cause several "hard-to-measure harms, such as impaired goodwill and competitive position, that can justify injunctions." *Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc*., 895 F.3d 1304, 1331 (Fed. Cir. 2018).

As a primary matter, an owner's "loss of control over its intellectual property rights" is a prototypical form of irreparable harm. *E.g., Lead Creation Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, 2023 U.S. Dist. LEXIS 25025, at *12 (M.D. Fla. Feb. 14, 2023). "The right to exclude competitors from using one's property rights is important," and "the need to protect this exclusivity" warrants an injunction. *E.g., Apple Inc. v. Samsung Elecs. Co*., 809 F.3d 633, 642 (Fed. Cir. 2015); *accord News Am. Mktg. In-Store, LLC v. Emmel*, 429 F. App'x 851, 853 (11th Cir. 2011) (unpublished) (permanent injunction barring defendant from any further disclosures of confidential information); *Marine Turbo Eng'g, Ltd. v. Turbocharger Servs. Worldwide, LLC*, 2012 U.S. Dist. LEXIS 200492, at *31-32 (S.D. Fla. 2012) ("some form of permanent injunction is appropriate with regard to [defendant's] use of Plaintis' Confidential Information").

Further, the injury to competitiveness caused by misappropriation of valuable confidential information is a classic form of irreparable harm, as such injury cannot

be reversed or repaired. *G4S Secure Integration LLC v. United States*, 161 Fed. Cl. 387, 418 (2022) ("lost opportunity to compete on a level playing field" found sufficient to prove irreparable harm).

c.    **A Stay Pending Appeal Would Not Substantially Harm Other Parties with an Interest in the Litigation**

The harm to other persons consists of an inability to carry out the Sale Transaction in the precise manner in which it was designed by the Trustee, to the Hawk Parties' sole benefit. The Debtors themselves are arguably are not harmed by the stay pending appeal, and may ultimately benefit.  The Trustee designed the sale process to benefit just the Hawk Parties, in contravention with his mandate to maximize the benefits to the Debtors and their estates. As discussed above, the sale transaction as contemplated in the sale motion would be harmful to other parties in interest, including the Debtors and their creditors.

d.    **A Stay Pending Appeal is in the Public Interest**

There is public interest in the finality of proceedings in the bankruptcy court as all courts. But there is an equal public interest in resolution of material disputed issues of law that can cause irreparable injury to the parties before that irreparable injury occurs.

Beyond these general public interest concerns, there is the fact that the proposed sale transaction is clearly against the public interest: the sale process contemplated by the Sale Motion disproportionately benefits the Proposed Purchaser

79079341;4

at the expense of all other stakeholders. The proposed Sale Motion results in the Debtors' assets being unjustly distributed to the Hawk Parties, in blatant contravention of the primary goal of maximizing recoveries for all creditors. As described herein, the sale process as contemplated  was inappropriate on its face. The insider stalking horse bidder should not have been permitted to credit bid given the facts and circumstances of these cases and the disputes surrounding the legitimacy of its claims. This is wholly inequitable to legitimate creditors and constitutes "cause" to deny credit bidding rights.

Finally, a stay is in the public interest because it affords comfort and confidence that the nation's bankruptcy courts are courts of law, that procedural and substantive due process are always required, that evidence matters, and that mistakes, misjudgments, and injustice can be remedied – even if and when speed and finality are important.  Unsecured creditors in this case and future litigants confronting these issues will have the assurance that they and their claims will not become casualties of unsafe haste toward flawed but "final" judgments borne primarily of convenience for a favored few.

### e.   <u>The Court Should Not Require a Bond Pending the Appeal</u>

Bankruptcy Rule 8007 refers twice to a bond pending appeal.  Subsection (a), which addresses initial motions to the bankruptcy court, states that the items of relief a movant must seek includes "the approval of a bond or other security provided to

obtain a stay of judgment."  Subsection (c), however, which addresses motions in a higher court, states:  "The district court, BAP, or court of appeals *may* condition relief on filing a bond or other security with the bankruptcy court" (emphasis added). Use of the word "may" indicates that a bond is not mandatory; the same is true when the motion is made in the bankruptcy court.  *In re Sindesmos Hellinikes-Kinotitos of Chicago*, 607 B.R. 898, 913 (N.D. Ill. 2019) (under Bankruptcy Rule 8007, "bonds on stays pending bankruptcy appeals are discretionary" and "are not mandatory").

Even if a bond were mandatory, or the Court deemed that Petitioners should provide a bond, the amount of the bond is also subject to the court's discretion, and can be in a small or *de minimis* amount.  Given the strong likelihood of success on the merits and the balancing of the other factors relevant to a stay discussed above (particularly the deprivation of meaningful due process throughout the proceeding), Petitioners respectfully ask that the Court dispense with a bond requirement in this case or, alternatively, that the Court set a small or *de minimis* amount for a bond.

## IV.    THE REFERENCE SHOULD BE WITHDRAWN.

### a.    Withdrawal of the Reference is Mandatory Under 28 U.S.C. § 157(d)

Under 28 U.S.C. § 1334(b), district courts have original but *not exclusive* jurisdiction of "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  *See* 28 U.S.C. § 1334(b).  Each district court may, however, "provide that any or all cases under title 11 and any or all proceedings arising under

52

title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." *See* 28 U.S.C. § 157(a). Further, pursuant to Rule 5011(c) of Bankruptcy Rules, under which district judges may stay proceedings pending disposition of a motion to withdraw the reference "on such terms and conditions as the judge deems proper."

However, under 28 U.S.C. § 157(d), the reference must be withdrawn "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." In either case, the District Court hears the motion for withdrawal of the reference. *See* Fed. R. Bankr. P. 5011(a) ("A motion for withdrawal of a case or proceeding shall be heard by a district judge."); *see also* Fed R. Bankr. P. 5011, advisory committee's note ("The withdrawal decision is committed exclusively to the district court."); Local Bankruptcy Rule 5011-1 (motion for withdrawal of the reference is first presented to the bankruptcy court for report and recommendation).

The majority of courts find withdrawal of the reference mandatory when a claim or defense entails "material and substantial consideration" of non-Bankruptcy Code federal law. *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 348 (S.D. Tex. 2009) (collecting cases). To find that a claim "involves 'substantial and material consideration' of non-bankruptcy federal law, the court must find the claim

will involve an interpretation of the federal law rather than the mere application of well-settled law." *Id.* (citing *In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 953-54 (7th Cir. 1996)).

Petitioners submit that (i) withdrawal of the reference is *mandatory* under 28 U.S.C. § 157(d) because the proceedings will involve substantial and material consideration of non-bankruptcy federal law (including law relating to due process and intellectual property) and (ii) in the alternative, the District Court should withdraw the reference under the discretionary standard of 28 U.S.C. § 157 because it is indisputably best suited to apply that non-bankruptcy law to the painstakingly litigated facts and related issues and to decide those issues as expeditiously and economically as possible.

With respect to the due process considerations raised, the denial of Petitioners' opportunity to present witnesses, seek discovery, conduct depositions, and otherwise build an evidentiary record constitutes a violation of several key procedural rights under both state and federal law. In addition to the Bankruptcy Court's limitation of Petitioners' cross-examination and refusal to hear from Petitioners' witnesses at the Sale Hearing, as described herein, the Bankruptcy Court has denied Petitioners any form of discovery whatsoever.

On June 16, 2024, Akerman LLP filed a Notice of Appearance as counsel for VSI and promptly filed an Objection to the Motion for Turnover [ECF No. 672 in

the Bankruptcy Court Proceedings] (the "**Objection to Turnover**") and a Motion to Reconsider the order granting the 9019 Agreement [ECF No. 686 in the Bankruptcy Court Proceedings] (the "**Motion to Reconsider**").

On July 26, 2024, VSI filed and served a Notice of Deposition Duces Tecum on the Trustee concerning the issues raised in the Objection to Turnover and Motion to Reconsider (the "**Original Discovery Requests**"). Among other things, the Original Discovery Requests sought information regarding exhibits to the Trustee's Motion for Turnover that were clearly altered and representations that were demonstrably false and misleading. Rather than account for the altered exhibit documents and misleading statements in his Motion for Turnover, the Trustee moved to quash the Original Discovery Requests, sought entry of a protective order, and moved to withdraw the offensive Motion for Turnover without prejudice [see ECF No. 724 in the Bankruptcy Court Proceedings].

On September 30, 2024, the Bankruptcy Court entered the *Order Granting Motion to Withdraw Turnover Action* [ECF No. 776 in the Bankruptcy Court Proceedings]. The same day, the Bankruptcy Court entered the *Order Granting Motion to Quash* [ECF No. 777 in the Bankruptcy Court Proceedings]. More recently, at the hearing on November 14, 2024, the Bankruptcy Court entered an order [ECF No. 805 in the Bankruptcy Court Proceedings] denying the reconsideration motion and granting the motion to quash remaining discovery,

79079341;4

including discovery relating to the sale process. Effectively, taken together, these orders have completely denied Petitioners any form of discovery, including with respect to the sale process.

At the federal level, these violations implicate the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution, which guarantee the right to a fair hearing and an opportunity to be heard. Specifically, the failure to allow discovery or to present witnesses contravenes Federal Rule of Civil Procedure 26, which guarantees parties the right to obtain discovery regarding any non-privileged matter relevant to the subject matter of the action. Additionally, Federal Rule of Civil Procedure 30 and Rule 32 protect a party's right to take depositions as a means of preserving testimony and building an evidentiary record. The deprivation of these rights also violates the right to a fair trial under the Sixth Amendment, as it denies a party the opportunity to present their case fully. Consequently, the deprivation of Petitioners' due process, as described herein, clearly violate non governing fair procedural practice and due process.

Further, with respect to issues relating to intellectual property, case law supports withdrawal of the reference. *See, e.g., Eli Global, LLC v. Univ. Directories, LLC,* 532 B.R. 249, 252-53 (M.D.N.C. 2015) ("The resolution of Defendant Debtors' trademark infringement claim will require significant consideration of non-Title 11 federal law."); *In re McCrory Corp.,* 160 B.R. 502, 505-07 (S.D.N.Y. 1993)

(finding both mandatory and discretionary withdrawal appropriate because "it would be economically and administratively prudent for a district judge, experienced in trademark law, rather than a bankruptcy judge to handle these matters"; transferring the proceedings to another district court).

**b.    In the Alternative, the District Court Should Withdraw the Reference Under the Discretionary Standard of Section 157**

In the event the District Court declines to order withdrawal of the reference under the mandatory provision in 28 U.S.C. § 157(d), Petitioners request the District Court order withdrawal under the discretionary provision.

**CONCLUSION**

For the foregoing reasons, this Court should grant the relief requested herein, and request the court permit the expanded word count in light of the unique circumstances at bar.

Dated:        December 9, 2024        Respectfully submitted,

                                     _/s/ Donald N. David_
                                     Donald N. David, SBN: 304846
                                     Mark S. Lichtenstein
                                     AKERMAN LLP
                                     1251 Avenue of the Americas
                                     37th Floor
                                     New York, NY 10020
                                     Telephone: (212) 880-3800
                                     Facsimile: (212) 880-8965
                                     Email: donald.david@akerman.com
                                            mark.lichtenstein@akerman.com
                                     -and-

57

79079341;4

R. Adam Swick (Admitted *Pro Hac Vice*)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701
Email: adam.swick@akerman.com

-and-

John H. Thompson *(Admitted Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959
Email: john.thompson@akerman.com

*Attorneys for Visual Semiconductor, Inc.*

**-** and -

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

- and –

*/s/ Chris Michaels*
Chris Michaels, Esq.
michaels@bpmlegal.com
Brown & Michaels, PC
400 M & T Bank Building
118 North Tioga Street
Ithaca, NY 14850

79079341;4

*Attorneys for Rembrandt 3D Holding Ltd.*

79079341;4

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.

Dated:        December 9, 2024        Respectfully submitted,

/s/ R. Adam Swick
Donald N. David, SBN: 304846
Mark Lichtenstein (Admitted *Pro Hac Vice*)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
        mark.lichtenstein@akerman.com
-and-

R. Adam Swick (*Pro Hac Vice to be applied f)*

AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701
Email: adam.swick@akerman.com

-and-

John H. Thompson *(*Admitted *Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750

60

Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959
Email: john.thompson@akerman.com

- and -

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

- and –

*/s/ Chris Michaels*
Chris Michaels, Esq.
michaels@bpmlegal.com
Brown & Michaels, PC
400 M & T Bank Building
118 North Tioga Street
Ithaca, NY 14850

*Attorneys for Rembrandt 3D Holding Ltd.*

61

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 21(a)(2), I hereby certify that on December 9, 2024, I dispatched a copy of the foregoing Petition by Federal Express to be served on the Bankruptcy Court judge at the address below and served a copy of the same on the below counsel of record via electronic mail:

> Chief Judge Ashely M. Chan
> United States Bankruptcy Court Judge
> for the Eastern District of Pennsylvania
> Robert N.C. Nix Sr. Federal Courthouse
> 900 Market Street, Suite 204
> Philadelphia, PA 19107
> (215) 408-2830

Dated:          December 9, 2024          Respectfully submitted,

/s/ R. Adam Swick
Donald N. David, SBN: 304846
Mark Lichtenstein (Admitted *Pro Hac Vice*)
AKERMAN LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020
Telephone: (212) 880-3800
Facsimile: (212) 880-8965
Email: donald.david@akerman.com
         mark.lichtenstein@akerman.com
-and-

R. Adam Swick (Admitted *Pro Hac Vice*)
AKERMAN LLP
500 West 5th Street, Suite 1210
Austin, TX 78701
Telephone: (737) 999-7103
Facsimile:   (512) 623-6701
Email: adam.swick@akerman.com

62

-and-

John H. Thompson *(Admitted Pro Hac Vice)*
AKERMAN LLP
750 Ninth Street, N.W. 750
Washington, D.C. 20001
Telephone: (202) 824-1760
Facsimile:   (202) 393-5959
Email: john.thompson@akerman.com

*Attorneys for Visual Semiconductor, Inc.*

- and -

*/s/ Andrew DeMarco*
Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

- and –

*/s/ Chris Michaels*
Chris Michaels, Esq.
michaels@bpmlegal.com
Brown & Michaels, PC
400 M & T Bank Building
118 North Tioga Street
Ithaca, NY 14850

*Attorneys for Rembrandt 3D Holding Ltd.*

79079341;4