# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF PENNSYLVANIA

In re:  Visual Semiconductor, Inc and Rembrandt 3D Holding Ltd.

*Petitioners.*

*On Petition for a Writ of Mandamus and Prohibition to the*
*United States Bankruptcy Court for the Eastern District of Pennsylvania in*
*Case No.  2:24-cv-06548-PD*
*District Judge:  Honorable Paul S. Diamond*

## RESPONSE IN OPPOSITION TO EMERGENCY JOINT PETITION FOR (I) WRIT OF MANDAMUS; (II) WRIT OF PROHIBITION; (III) MOTION FOR STAY PENDING APPEAL; AND (IV) IN THE ALTERNATIVE, MOTION FOR WITHDRAWAL OF REFERENCE FROM BANKRUPTCY COURT

Steven M. Coren, Esquire
Andrew J. Belli, Esquire
COREN & RESS, P.C.
Two Commerce Square, Suite 3900
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 735-8700
E-mail:  scoren@kcr-law.com
        abelli@kcr-law.com

*Counsel to William A. Homony Chapter 11 Trustee of the Bankruptcy Estates of Stream TV Networks, Inc. and Technovative Media, Inc.*

Edmond M. George, Esquire
Michael D. Vagnoni, Esquire
OBERMAYER REBMANN MAXWELL & HIPPEL LLP
Centre Square West
1500 Market Street, Suite 3400
Philadelphia, PA 19102
Telephone: (215) 665-3066
E-mail: edmond.george@obermayer.com
        michael.vagnoni@obermayer.com

*Counsel to William A. Homony Chapter 11 Trustee of the Bankruptcy Estates of Stream TV Networks, Inc. and Technovative Media, Inc.*

# TABLE OF AUTHORITIES

**Cases**

*ACC Bondholder Grp. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007).........................................................23

*Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409 (6th Cir.1999) ................33

*Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*, 504 B.R. 754, 761-62 (S.D.N.Y. 2014) ................................................................................................21

*Burgess v. Sikes (In re Burgess)*, 392 F.3d 782, 785 (5th Cir. 2004).....................16

*Cheney v. U.S. Dist. Ct. for Dist. Of Columbia*, 542 U.S. 367, 369 (2004) .............7

*Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001)..............................17

*Cipla Ltd. v. Amgen Inc.*, Case No. 19-00044, 2019 U.S. Dist. LEXIS 78384, 2019 WL 2053055, at *1 (D. Del. May 9, 2019)...........................................................27

*Cottillion v. United Ref. Co.*, Case No. 09-0140E, 2014 U.S. Dist. LEXIS 177243, 2014 WL 7344005, at *3 (W.D. Pa. Dec. 23, 2014) .............................................28

*Dehainaut v. Cal. Univ. of Pa.*, Case No. 10-00899, 2011 U.S. Dist. LEXIS 96841, 2011 WL 3810132, at *2 (W.D. Pa. Aug. 29, 2011)...........................................27

Delaware Involuntary Bankruptcy Case at D.I. 37, 63:18-64:18 .............................5

*Feldman v. ABN AMBRO Mortg. Grp., Inc.*, 2020 WL 618604, at *3 (E.D. Pa. Feb. 10, 2020) ...............................................................................................................31

*Forks Specialty Metals*, 2020 WL 2098099 .................................................... 31, 32

*Gorka v. Joseph (In re Atlantic Gulf Communities, Corp.)*, 326 B.R. 294, 299 (Bankr. D. Del.  2005) ..........................................................................................17

*Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 88 (3d Cir. 1992) ....................................8

*Hatzel v. Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989) ...........................................................................................................31

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987) ............................................................................................................27

*In re Abbott Lab'ys*, 96 F.4th 371, 379 (3d Cir. 2024) ...............................................8

*In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986)...........................................13

*In re Anderson*, 560 B.R. 84, 89–90 (S.D.N.Y. 2016) ...............................................23

*In re Coppedge*, No. 24-1595, 2024 WL 3423710 ....................................................8

*In re Earth Pride Organics, LLC*, 602 B.R. 1, 12 (E.D. Pa. 2019) ................. 30, 31

*In re Forks Specialty Metals Inc.*, , 2020 WL 2098099, at *1 (E.D. Pa. May 1, 2020) ......................................................................................................30

*In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) ........... 23, 29

*In re Kane*, 628 F.3d 631, 641 n.7 (3d Cir. 2010) ...................................................17

*In re Karupaiyan*, No. 23-3044, 2024 WL 616861, at *1 (3d Cir. Feb. 14, 2024) 11, 12

*In re Lall*, No. 24-2538, 2024 WL 4751200, at *1 (3d Cir. Nov. 12, 2024) ............7

*In re Lock*, 329 B.R. 856, 858 (Bankr. S.D. Ill. 2005) ............................................16

*In re Messina*, 687 F.3d 74, 77 n.4 (3d Cir. 2012) ..................................................18

*In re NJ Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 Bankr. LEXIS 4498 ............................................................................................................18

*In re Nwanze*, 242 F.3d 521, 524 (3d Cir. 2001) .......................................................8

*In re Olympia Holding Corp.*, 129 B.R. 679, 681 (Bankr. M.D. Fla. 1991) ...........18

*In re Overmyer*, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985) .....................................23

*In re Pruitt*, 910 F.2d at 1168 ......................................................................... 31, 34

*In re Robotic Vision Sys., Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005) ..............19

*In re Savage & Assocs, P.C.*, No. 05 Civ. 2072, 2005 U.S. Dist. LEXIS 3161, 2005
    WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005)......................................................28

*In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995)..................................................30, 33

*In re Schlein*, 188 B.R. at 14.............................................................................32

*In re Scimeca Found., Inc.*, 497 B.R. 753, 772  (Bankr. E.D.Pa. 2013).................17

*In re Spain*, 831 F.2d 236, 240 (11th Cir. 1987) ................................................18

*In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848........................................4

*In re Strong*, No. AP 17-50646 (BLS), 2018 WL 936103, at *3 (D. Del. Feb. 14,
    2018) .........................................................................................................22

*In re Taub*, 470 B.R. 273, 276 (E.D.N.Y. 2012) ................................................21

*In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996) ......................................19

*In re Wash. Mfg. Co.*, 133 B.R. 113, 116 (M.D. Tenn. 1991)...............................32

*In re Whitehall Jewelers Holdings, Inc.*, Case No. 08-11261 (KG), 2008 WL
    2951974, at *9 (Bankr. D. Del. July 28, 2008)...........................................19, 20

*In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO.....................4

*Joseph F. v. Comm'r of Soc. Sec.*, 2023 WL 3853682, at *12 (E.D. Mich. June 6,
    2023) .........................................................................................................33

*Madden v. Myers*, 102 F.3d 74, 77 (3d Cir. 1996)..............................................12

*Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001) ..............19

*Muniauction, Inc. v. Thomson Corp.*, Case No. 01-01003, 2007 U.S. Dist. LEXIS
    61459, 2007 WL 2406950, at *1 (W.D. Pa. Aug. 21, 2007)..............................28

*Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).........................28

*Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and
    Handlers, Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Publ'g*

*Co., Inc.*, Case No. 19-01472, 2019 U.S. Dist. LEXIS 232000, 2019 WL 9101872, at *3 (W.D. Pa. Dec. 27, 2019)..........................................................27

*NJ Affordable Homes*, 2006 Bankr. LEXIS 4498............................................. 18, 19

*NJ Affordable Homes*, 2006 Bankr. LEXIS at *41....................................................19

*Noll v. Peterson*, 87 A.F.T.R.2d 2001-2475, 2001 WL 721733, at *3 (D. Idaho May 14, 2001*)*..........................................................................................33

*Robotic Vision*, 322 B.R. at 506..............................................................................19

*Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 702 (3d Cir. 1991).....................................10

*Rothenberg v. Ralph D. Kaiser Co.*, 200 B.R. 461, 463 (D.D.C. 1996) ................23

*Scimeca Found.*, 497 B.R. at 772.............................................................................18

*Seitz v. Rothermel*, 638 B.R. 846, 849 (E.D. Pa. 2022) ...........................................31

*Sewanee Land, Coal & Cattle v. Lamb (In re Sewanee Land, Coal & Cattle, Inc.)*, 735 F.2d 1294, 1295 (11th Cir. 1995) ....................................................21

*Stern v. Bambu Sales, Inc.*, 201 B.R. 44, 46 (E.D.N.Y. 1996) ................................24

*Stream TV Networks, Inc. v. Stastney*, No. 23-MC-135-KSM, 2023 WL 792868234

*TGP Communs., LLC,* No. 24-13938-MAM, 2024 Bankr. LEXIS 2071 (Bankr. S.D. Fla. Sep. 6, 2024)..........................................................................21

*Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 1999 WL 179749, at *2 n.2 (E.D. Pa. Mar. 17, 1999).......................................................30

*Times Mirror Magazines, Inc.*, 1999 WL 179749 ...................................................32

*Triple Net Invs. IX, LP v. DJK Residential (In re DJK Residential, LLC)*, No. 08-10375, 2008 U.S. Dist. LEXIS 19801, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008) ...............................................................................29

*United States v. Santtini*, 963 F.2d 585, 590 (3d Cir. 1992).....................................8

*Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) ........................................................................................................16

**Statutes**

11 U.S.C. § 363(f) ............................................................................... 17, 18

11 U.S.C. § 541(a)(1) ...............................................................................16

11 U.S.C. 363(b)(1) ..................................................................................16

28 U.S.C. § 157(d) ...................................................................................30

**Other Authorities**

Collier on Bankruptcy ¶ 363.06[1] (15th ed. rev. 2005) ........................................18

**Rules**

Federal Rule of Bankruptcy Procedure 8007(a)(1)....................................................21

## I.    INTRODUCTION

William A. Homony, Chapter 11 Trustee (the "Trustee") of the bankruptcy estates of Stream TV Networks, Inc. ("Stream") and Technovative Media Inc. ("Technovative", or collectively with Stream, the "Debtors"), by and through his counsel, Coren & Ress, P.C., and Obermayer Rebmann Maxwell & Hippel LLP, files this objection ("Objection") to the Emergency Joint Petition for (I) Writ of Mandamus; (II) Writ of Prohibition; (III) Motion for Stay Pending Appeal; and (IV) In the Alternative, Motion for Withdrawal of Reference of Bankruptcy Court (the "Mandamus Petition") filed by Visual Semiconductor, Inc. ("VSI") and Rembrandt 3D Holding Ltd. ("Rembrandt").

VSI and Rembrandt are bad actors—not innocent victims.

In its January 5, 2024, Trustee Memorandum Opinion (Bankr. D.I. 548, a copy of which is attached as Exhibit A), the Bankruptcy Court took the extraordinary step of appointing a Chapter 11 Trustee and removing Debtors' former CEO, Mathu Rajan ("Rajan")—who happens also to be the founder and CEO of Petitioner VSI—for gross mismanagement, breach of fiduciary duty and rampant self-dealing:

> Rather than moving expeditiously toward confirmation of a reorganizational plan that addresses creditor claims and formulates the Debtors' operations moving forward, these cases have stalled at virtually every turn.  The Court has expressed its concern with the cases' lack of progress and direction on multiple occasions.  Furthermore, the evidence at Trial on the pending motions crystalized the Court's primary and urgent concern with the administration of the

Debtors' cases to date, i.e., the plans, trustworthiness, and motivations of Mr. Rajan in his role as, for all intents and purposes, the singular figure in the Debtors' management. **There are many examples, large and small, that highlight (a) the Court's lack of faith in Mr. Rajan's ability or willingness to act consistent with the fiduciary duties the Debtors owe their creditors and the Court**, (b) the relatively directionless nature of these cases to date, and (c) the entrenched acrimony between the Debtors, Hawk, SLS, and SeeCubic that has permeated the cases and driven nearly all activity to date.

…

Indicative of the Court's chief concern with the Debtors' proposal to obtain financing from VSI, Mr. Rajan was also purporting to testify on behalf of VSI. Although the Debtors ultimately withdrew Mr. Rajan as a representative of VSI when the Court questioned how that could be, Mr. Rajan's dual role was indicative of the Court's trouble with the Debtors' emergency financing proposal: the evidence at the hearing made clear to the Court that the proposal to have the Debtors incur $1 million in post-petition administrative debt to VSI was not only unnecessary given the availability of approximately €700,000 in funding directly from SeeCubic to non-debtor SCBV, but was also fatally flawed because Mr. Rajan was on both sides of the proposed transaction."

…

[Mr. Rajan] has administered [the Debtors'] estates with an eye towards what he personally wants to accomplish [via VSI] and disclose, rather than acting consistent with his obligations to the Court and the estates' creditors.

…

[T]he Court's trust in the Debtor's management[, i.e., Mr. Rajan,] has deteriorated in light of transactions the Debtors have proposed either at the eleventh hour or under cover of more innocuous requests for relief that seem to benefit VSI without justification.

…

[Numerous] transactions [proposed by Mr. Rajan] have had the taint of benefit to VSI without clear benefit to the Debtors and their estates.  Where Mr. Rajan stands on both sides of those transactions, they only add to the Court's conclusion that he has breached his fiduciary duties in proposing them without being able to articulate how they are a reasonable exercise of his business judgment."

…

The already-discussed transactions and requested relief that appear to be primarily for the benefit of VSI are reason enough to find that Mr. Rajan has engaged in gross mismanagement of the Debtor's estates.

…

Alarmingly, the interrelationship between VSI, Stream, and Mr. Rajan's overlapping interests and roles is so entrenched that Mr. Rajan's testimony at Trial was at times rendered unintelligible, or alternatively, intentionally deceptive, by his inability or unwillingness to draw distinctions between the entities and his roles with each.

…

Mr. Rajan's conflicted interests, gamesmanship, and lack of candor to the Court and creditors rises to the level of gross mismanagement of the estates, even when viewed against the high standard of glaring and inexcusable badness.

Trustee Memorandum Opinion at pp. 31, 41-42, 45, 46, 51, 59, 61 (emphasis added).

3

This is the third bankruptcy case in which Rajan (first thru an entity controlled by him named "VTI" and next thru his entity "VSI") attempted to confiscate Stream assets for himself, at the expense of the Debtor's secured and other creditors, and the second bankruptcy case in which Rembrandt colluded with Rajan to accomplish that untoward result. The first was a Chapter 11 case initiated by the Stream TV Debtor on February 24, 2021, and docketed at *In re: Stream TV Networks, Inc.*, Bankr. D. Del. No. 21-10433-KBO (the "Delaware Voluntary Bankruptcy Case") and the second was an involuntary Chapter 7 case initiated on May 23, 2021, by, *inter alia*, purported colluding creditor Rembrandt, docketed at *In re Stream TV Networks, Inc.*, Bankr. D. Del. 21-10848 (the "Delaware Involuntary Bankruptcy Case").

The Delaware Bankruptcy Court dismissed the Delaware Voluntary Bankruptcy Case on May 17, 2021, as having been filed in bad faith:

> Mr. Rajan established VTI of which he is the controlling shareholder, president, and until recently the sole director. Using VTI he began to fundraise using Stream's assets despite the injunction.

> It is clear, through documentary evidence, that Mr. Rajan intended to use a Stream bankruptcy as a mechanism by which he could, via Stream, regain the Ultra-D assets from the secured lenders and then through VTI obtain them at a fraction of what he believed was the assets' value.

Delaware Voluntary Bankruptcy Case at D.I. 200, 14:20-15:4; *id.* at D.I. #198 (order dismissing bankruptcy).

On May 23, 2021, just six days later, the Stream TV Debtor, Rajan, Rajan's brother Raja, and Rembrandt 3D Holding Ltd. executed a collusive settlement agreement (the "Rembrandt Agreement") to grant Rembrandt creditor status in a ruse to circumvent the dismissal of the Delaware Voluntary Bankruptcy Case. It is this agreement that Petitioner's trumpet, and which the Trustee challenges in the Bankruptcy Court as a collusive sham.

On May 23, 2021, the same day that Rajan executed the Rembrandt Agreement on his own behalf and on behalf of the Debtor, Rembrandt, as one of three petitioning creditors, filed the Delaware Involuntary Bankruptcy Case against the Stream TV Debtor, with the timing of the filing substantiating the concern that the Rembrandt Agreement was a sham concocted by Mr. Rajan and Rembrandt to fix a contrived claim for Rembrandt to end-run the Delaware Bankruptcy Court's dismissal of the Delaware Voluntary Bankruptcy Case.

Not fooled, the Delaware Bankruptcy Court again dismissed Stream's Delaware bankruptcy proceeding as a bad faith filing, holding that "it's clear to me that this proceeding was filed as another attempt by the parties to circumvent my dismissal order" and agreeing with the conclusion that VTI was seeking relief which "would not be beneficial to the creditor body."  Delaware Involuntary Bankruptcy Case at D.I. #37, 63:18-64:18.

Running from an unfriendly Delaware Bankruptcy Court, Rajan, through VSI and Rembrandt, turned to the Pennsylvania Bankruptcy Court, and the same playbook which now seeks to obstruct and undo the Trustee's successful effort to realize millions of dollars for the Debtors' creditors.

## II.    ABRIDGED FACTS

For a fulsome discussion of relevant facts, in addition to the Trustee Memorandum Opinion, the Trustee refers the Court to the Bankruptcy Court Sale Order entered December 9, 2024, (D.I. #876) (the "Sale Approval Order", a copy of which is attached as Exhibit "B"). The Sale Order details the Trustee's successful efforts to marshal and sell Debtor assets for the benefit of creditors, and it is this order –which is on appeal to this Court along with several other orders entered by the Bankruptcy Court—which brings to an end, for the benefit of creditors, the Rajan, VTI, VSI, Rembrandt scheme to abscond with the Debtors' assets, particularly the equity in non-debtor foreign subsidiaries that are developing technology which Rajan covets.

After settling with Debtors' secured creditors, the Trustee obtained Bankruptcy Court authority to sell substantially all of the Debtors' assets consisting of the Stream assets identified in the asset purchase agreement filed in connection with the Trustee's Sale Motion (the "APA") and the ownership interests of Technovative in its downstream subsidiaries, Technology Holdings Delaware LLC,

Media Holdings Co, LLC, and Ultra-D Ventures C.V. (D.I. #791-1) (the "Non-Debtor Subsidiaries", collectively the "Assets") for the benefit of the Debtors' estates and their creditors.

Petitioners' efforts to obfuscate notwithstanding, the Trustee did not sell, and the Trustee is not transferring any property owned by the Non-Debtor Subsidiaries, including any intellectual property rights (as those assets are not the property of the Debtors' estates). As to Debtor Technovative, the Trustee is selling only that Debtor's interest in the Non-Debtor Subsidiaries. As Petitioners know, the Debtors themselves own no intellectual property rights—let alone those which allegedly incorporate Rembrandt intellectual property—as the Debtors' Schedules of Assets and Liabilities, signed under penalty of perjury by Rajan, make clear. *See* Stream D.I. #52; Technovative D.I. #47.

## III.   ARGUMENT

### A.   Petitioners Fail to Meet their Burden of Demonstrating Entitlement to the Extraordinary Remedy Provided by the All Writs Act

Writs of mandamus and/or prohibition are a "drastic and extraordinary remedy reserved for really extraordinary cases." *Cheney v. U.S. Dist. Ct. for Dist. Of Columbia*, 542 U.S. 367, 369 (2004) (quotation marks and citation omitted); *In re Lall*, No. 24-2538, 2024 WL 4751200, at *1 (3d Cir. Nov. 12, 2024) (the mandamus remedy is "a drastic one, to be invoked only in extraordinary situations" (quotation marks and citation omitted)); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 88

(3d Cir. 1992) (the federal courts' "power to issue writs of mandamus or prohibition under the All Writs Act" must be exercised "with caution" and invoked "only in extraordinary situations"); *In re Nwanze*, 242 F.3d 521, 524 (3d Cir. 2001) ("The writ of mandamus is a drastic remedy that a court should grant only in extraordinary circumstances in response to an act amounting to a judicial usurpation of power." (quoted reference omitted)).

"To obtain mandamus relief, [a petitioner] must show: (1) a clear and indisputable abuse of discretion or error of law, (2) a lack of an alternate avenue for adequate relief, and (3) a likelihood of irreparable injury.  When laying out mandamus requirements, . . . petitioners must demonstrate a clear abuse of discretion, or conduct amounting to usurpation of the judicial power.  By grouping 'clear abuse of discretion' with something as egregious as a usurpation of judicial power, the Supreme Court conveyed that a clear and indisputable abuse of discretion standard presents a high bar.  Moreover, even if Petitioners here can make the three-pronged showing set forth above, this Court still has broad discretion in deciding whether to grant or deny a mandamus petition." *In re Abbott Lab'ys*, 96 F.4th 371, 379 (3d Cir. 2024) (internal quotation marks, alteration marks, and citations omitted).  "[M]andamus will not lie where an appeal may be had." *In re Coppedge*, No. 24-1595, 2024 WL 3423710, at *1 (3d Cir. July 16, 2024) (citing *In re Nwanze*, 242 F.3d at 524); *see also United States v. Santtini*, 963 F.2d 585, 590 (3d Cir. 1992)

("It is well-established that a writ of prohibition may not be used as a substitute for review by appeal.").

> 1. **The Mandamus Petition is a Transparent Eleventh-Hour Attempt at Forum/Judge Shopping and Should be Summarily Rejected**

By styling their Mandamus Petition as an emergency, Petitioners seek to cloud the reality that the Trustee's agreement with Hawk to market the Debtors' assets for auction pursuant to 11 U.S.C. § 363 and allow See Cubic to credit bid at that auction (the "Hawk Agreement") was brought before the Bankruptcy Court on May 6, 2024, s*ee* Bankr. D.I. #630 (Trustee's Motion for Entry of an Order Approving Hawk Settlement) and was intensely litigated in the Bankruptcy Court at a series of hearings. *See* Bankr. D.I. #651 (6/5/24 "Evidentiary Hearing Held on . . . Motion to Approve Compromise"); *id.* at #674, 676 (6/18/24 hearing re: United States Trustee and Rembrandt objection to Trustee's motion to approve employment of an investment banker to effectuate the Hawk agreement); *id.* at #791 (11/7/24 hearing held on VSI's motion to reconsider the Bankruptcy Court's approval of the Hawk Agreement); *id.* at #804 (11/13/24 hearing held on Trustee's motion to approve bidding procedures); *id.* at #860 (12/4/24 hearing held concerning sale of Debtors' assets).

Petitioners' dissatisfaction with the various decisions of the Bankruptcy Court, including the Hawk Agreement which precipitated the Trustee's efforts to

market and sell the Debtors' property, is evidenced by their direct appeals and this

collateral attack of numerous Bankruptcy Court orders:

1.  Rembrandt's appeal the Bankruptcy Court Order approving the Hawk Agreement, *see* Bankr. D.I. 685 (notice of appeal), docketed at E.D. Pa. No. 24-2727;

2.  VSI's appeal of the Bankruptcy Court Order denying reconsideration, *see* Bankr. D.I. 821 (notice of appeal), docketed at E.D. Pa. No. 24-6397;

3.  VSI's appeal of the Bankruptcy Court Order approving bid procedures, see Bankr. D.I. 861 (notice of appeal), docketed at E.D. Pa. No. 24-6498;

4.  Rembrandt and VSI's joint appeal of the Bankruptcy Court Order approving the sale of the Debtors' assets to See Cubic, see Bankr. D.I. 873 (notice of appeal), E.D. Pa. docket number pending;

5.  Rembrandt and VSI's joint appeal of the Bankruptcy Court Order approving the sale of the Debtors' assets to See Cubic, see Bankr. D.I. 877 (notice of appeal), E.D. Pa. docket number pending; and

6.  Rembrandt's filing in the Bankruptcy Court of an adversary proceeding raising issues relating to the Hawk Agreement and the sale process, see Bankr. E.D. Pa. Adv. No. 24-00142.

Petitioners omit these proceedings from their list of pending cases that may

be impacted by the instant petition, *see* Mandamus Petition at pp. 4-5, and for good

reason.  The numerous filings demonstrate that the Mandamus Petition is simply a

scorched earth litigation tactic to undermine well-established appeal procedures.

*See, e.g., Rolo v. Gen. Dev. Corp.*, 949 F.2d 695, 702 (3d Cir. 1991) (holding that

the "rigorous standard" governing application of the All Writs Act "allows the courts

of appeals to remedy egregious instances of judicial overreaching or misconduct, without allowing the writ to become a vehicle for interlocutory appeal of every issue in a case"); *In re Karupaiyan*, No. 23-3044, 2024 WL 616861, at *1 (3d Cir. Feb. 14, 2024) ("Mandamus or prohibition may not be used as a substitute for appeal."). The numerous appeals and other proceedings initiated by Petitioners – the earliest of which was filed on June 20, 2024, *see* Bankr. D.I. #685 – also demonstrates that the only emergency here is of Petitioners' own creation, as the issues underlying this Mandamus Petition have been raised with the Bankruptcy Court for months.

The Bankruptcy Court decisions raised in the Mandamus Petition – the Bankruptcy Court's approval of the Trustee's entry into a compromise and the sale of estate assets – are routinely entered by and squarely within the province of the Bankruptcy Court.  While Petitioners disagree with various of the Bankruptcy Court's decisions, none of their disputes raise the type of grave jurisdictional concerns required for entry of a Writ of Mandamus/Prohibition.  Petitioners' concerns can adequately be addressed in their pending appeals, and their invocation of the All Writs Act should be rejected.

> **2.    The Bankruptcy Court Properly Made a Finding of Good Faith—a Finding Which Has Been Appealed by Petitioners—and Which Renders the Requested Writ Entirely Inappropriate**

Petitioners invoke the All Writs Act with a falsehood—that "[t]he Bankruptcy Court failed to make a finding of good faith" with respect to the purchaser.

Mandamus Petition at p. 23.  To the contrary, the Bankruptcy Court's December 9, 2024 Sale Approval Order (Bankr. D.I. #876) explicitly found that, "[t]he Trustee and the Buyer have negotiated and undertaken their roles leading to the entry into the Asset Purchase Agreement in a diligent, non-collusive, fair, reasonable, and good faith manner and at arms' length."  Indeed, the Sale Approval Order contains a section explicitly titled "Good Faith of Buyer" which found, *inter alia*, that "[t]he Asset Purchase Agreement and the consideration to be paid by the Buyer under the Asset Purchase Agreement were negotiated, proposed, and entered into, at arm's-length, in good faith and without collusion pursuant to section 363(m) of the Bankruptcy Code."  *Id.* at ¶¶ T-W.

Petitioners can seek their requested relief via the well-established bankruptcy appeal process – indeed, Petitioners have appealed the Sale Approval Order.  Bankr. D.I. #877.  In short, the availability of an appeal (and the Petitioners exercise of that remedy) forecloses mandamus relief.  *See, e.g., Madden v. Myers*, 102 F.3d 74, 77 (3d Cir. 1996) (explaining that "a writ of mandamus may not issue if a petitioner can obtain relief by appeal"); *In re Karupaiyan*, No. 23-3044, 2024 WL 616861, at *1 (3d Cir. Feb. 14, 2024) ("Mandamus or prohibition may not be used as a substitute for appeal.").

Petitioners go to great lengths to detail VSI's lengthy history with SeeCubic— a relationship complicated by persistent disputes over the Secured Creditors' efforts

to exercise their rights to their collateral, whether the secured debt had been converted, and the Rajan's efforts to retain or regain control over the Debtors – efforts that continue to this day through the Rajan's control over VSI.  But the argument that SeeCubic is disqualified as a buyer because of its purportedly bad acts was raised by Petitioners and properly rejected by the Bankruptcy Court because the good faith of a purchaser is measured by the purchaser's conduct *during the sale proceedings*, not the machinations before about which Petitioners complain: "[the] requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings.  Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."  *In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986).  Petitioners fail to point to a single instance where SeeCubic or the Trustee engaged in fraud or collusion with other bidders during the sale process, of course, because no such bad faith conduct took place.[1]

Here, rather than an attempt to take gross advantage of other bidders, the credit bid of SeeCubic was approved by the Bankruptcy Court as the Stalking Horse Bid

---

[1] Petitioner's reliance on the declaration of Bud Robertson is seriously misplaced, as the alleged misconduct occurred pre-petition during years' long litigation between the Debtors, Rajan, and the secured creditors, or are vague allegations that SeeCubic failed to return assets that had no bearing on the sale.

as part of the Hawk Settlement after notice and a hearing and over VSI and Rembrandt's objection. The objections over whether SeeCubic was an appropriate stalking horse bidder either were or should have been raised in the objections to the 9019 Motion, wherein the Trustee sought to have SeeCubic approved as the stalking horse bidder, which the 9019 Order ultimately accomplished.

Upon his appointment, the Trustee inherited bankruptcy estates that Rajan left in complete disarray with no money, no operations, and in active and unstayed litigation with Hawk. Rather than spend money he did not have to pursue VSI and Rembrandt's quixotic quest, the Trustee solicited proposals from VSI, Rembrandt and the secured creditors to purchase the Debtors' assets or fund a Plan, and in an exercise of his business judgment approved by the Bankruptcy Court, entered into the Hawk Settlement which exposed the Assets to the open market and permitted interested parties, including VSI and Rembrandt, to bid on those Assets. The sale has occurred, the assets were acquired by the only bidder, and the All Writs Act has no place in these routine bankruptcy proceedings.[2]

---

[2] The Petitioners' complaint as to the Bankruptcy Court's discretionary rulings as to relevant evidence wildly miss the mark and do not justify invocation of the All Writs Act. Trial courts routinely preclude irrelevant evidence, and that's all that occurred here. The Bankruptcy Court afforded Petitioners the opportunity to explain the relevance of the testimony they sought to elicit but they failed to persuade the court as to its relevance to the sale order proceedings. The decision was both correct as a matter of law, and certainly within the wide latitude afforded trial courts, as it merely

### 3. The APA Approved by the Bankruptcy Court Explicitly Excludes Rembrandt Property, Rendering Entry of a Writ Entirely Inappropriate

Petitioners claim that "there are extensive defects regarding section 363(f) of the Bankruptcy Code, namely that the assets cannot be sold 'free and clear,'" claiming that Rembrandt's property "is embedded within the Stream estate property [the Trustee] purports to sell." Mandamus Petition at pp. 29-30. Contrary to Petitioners' unsupported allegations, the Trustee sold only assets owned directly by the Debtors, and Rembrandt's alleged intellectual property was expressly excluded. *See* APA, Exhibit 1 to Sale Approval Order at ¶¶ 2.2(j), (k) (excluding from the sale "any grant of rights or license by Rembrandt . . . or affiliates to Stream" and "any physical assets that contain or include Rembrandt Intellectual Property, to the extent valid, existing and enforceable as determined by a final, non-appealable order form a court of competent jurisdiction").

The Sale Approval Order and associated APA explicitly excludes any property belonging to Rembrandt and Petitioners' argument that the Bankruptcy

---

sought to relitigate prior matters such as the Hawk Settlement, and the irrelevant location of assets than no one had an interest in buying. The power of the court to exclude irrelevant evidence is well established. FRE 403; *Solvay, S.A. v. Honeywell Int'l, Inc.*, 886 F. Supp. 2d 396, 2012 U.S. Dist. LEXIS 117126 (D. Del. 2012), aff'd, 742 F.3d 998, 109 U.S.P.Q.2d (BNA) 1609, 2014 U.S. App. LEXIS 2604 (Fed. Cir. 2014). *See also Fortune Funding, LLC v. Ceridian Corp.*, 368 F.3d 985, 64 Fed. R. Evid. Serv. (CBC) 579, 2004 U.S. App. LEXIS 10696 (8th Cir. 2004)(evidence excluded because it had no probative value).

Court committed an error of jurisdictional dimension justifying the entry of a writ of mandamus/prohibition is meritless.

Section 541(a)(1) of the Bankruptcy Code provides that the filing of a voluntary bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. § 541(a)(1). Without question, section 541(a)(1) of the Bankruptcy Code is given broad application and includes "all kinds of property, including tangible or intangible property, causes of action . . . and all other forms of property. . . ." *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241 (3d Cir. 2001) (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983)); *see also Burgess v. Sikes (In re Burgess)*, 392 F.3d 782, 785 (5th Cir. 2004) (noting that the "'scope of property rights and interests included in a bankruptcy estate is very broad: the conditional, future, speculative or equitable nature of an interest does not prevent it from being property of the bankruptcy estate") (citations omitted); *In re Lock*, 329 B.R. 856, 858 (Bankr. S.D. Ill. 2005) ("The scope of estate property is very broad and includes every conceivable interest held by the debtor in property") (citation omitted).

Section 363(b) of the Bankruptcy Code allows a trustee to sell property of the estate outside the debtor's ordinary course of business after notice and a hearing. 11 U.S.C. § 363(b)(1). Although implicit within the statutory grant of authority to sell

property under 11 U.S.C. § 363 is the requirement that the estate have an interest in the property to be sold. *Cinicola v. Scharffenberger*, 248 F.3d 110, 121 (3d Cir. 2001), "[P]roperty of the estate" as defined by section 541(a) of the Bankruptcy Code includes contingent and disputed property interests of a debtor. 11 U.S.C. § 541(a). Thus, an estate can normally convey its ownership interest in property, subject to the claims of a third party. *In re Kane*, 628 F.3d 631, 641 n.7 (3d Cir. 2010); *Gorka v. Joseph (In re Atlantic Gulf Communities, Corp.)*, 326 B.R. 294, 299 (Bankr. D. Del. 2005) (regardless of whether the estate had ownership of the property at issue, the estate did have a claim to ownership, which the trustee could sell outside the ordinary course of business by executing quitclaim deed in sale agreement).

Accordingly, under section 363(f) of the Bankruptcy Code, a trustee can sell property of the estate free and clear of any interest in such property of an entity other than the estate, provided that one of five conditions is met: "(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest." 11 U.S.C. §

363(f) (emphasis added); *In re Scimeca Found., Inc.*, 497 B.R. 753, 772  (Bankr. E.D. Pa. 2013).

Section 363(f) is drafted in the disjunctive; that is, the sale free of the claimed interest can occur if any one of the conditions specified in the subsection has been satisfied.  *In re NJ Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 Bankr. LEXIS 4498, *37-38 (Bankr. D.N.J. June 29, 2006); *Scimeca Found.*, 497 B.R. at 772 (quoting *In re Messina*, 687 F.3d 74, 77 n.4 (3d Cir. 2012)). Furthermore, section 363(f) permits the bankruptcy court to authorize a sale free of "any interest" that an entity has in property of the estate. 3 Collier on Bankruptcy ¶ 363.06[1] (15th ed. rev. 2005).

Section 363(f)(4) permits a sale of property of the estate free and clear of a third party's interest therein if the interest is in bona fide dispute.  11 U.S.C. § 363(f)(4).  Although Section 363(f)(4) is most applied when the entity's "interest" is a lien or security interest, the plain language of the provision would include an ownership "interest."  *See, e.g., In re Olympia Holding Corp.*, 129 B.R. 679, 681 (Bankr. M.D. Fla. 1991); *NJ Affordable Homes*, 2006 Bankr. LEXIS 4498 4498 at *37-38. . This result is also strongly supported by the wording of Section 363(h), setting forth provisions for the sale of a co-owner's "interest" and using the word "interest" to mean an ownership rather than a lien or security interest. *See In re Spain*, 831 F.2d 236, 240 (11th Cir. 1987).  The phrase "bona fide dispute" is not

defined in the Bankruptcy Code. Nonetheless, courts applying Section 363(f)(4) of the Bankruptcy Code have developed a standard for determining whether a "bona fide dispute" exists; that is, courts will inquire "whether there is an objective basis for either a factual or legal dispute as to the validity of the asserted interest." *NJ Affordable Homes*, 2006 Bankr. LEXIS at *41 (citing *In re Taylor*, 198 B.R. 142, 162 (Bankr. D.S.C. 1996)).

The court in *NJ Affordable Homes Corp.* noted that the evidentiary record required to support a finding of a "bona fide dispute" for purposes of section 363(f)(4) of the Bankruptcy Code depends upon a case-by-case consideration of the following: (i) the procedural posture of the case; (ii) the need to expedite the sale; and (iii) the nature of the basis for determining that a dispute exists. *Id.* at *41-42 (citing *In re Robotic Vision Sys., Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005)). The purpose behind § 363(f)(4) "is to allow the sale of property of the estate free and clear of disputed interests so the liquidation of the assets is not unnecessarily delayed while the disputes are being litigated." *Robotic Vision*, 322 B.R. at 506 (citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001)). Succinctly, this is the concept behind § 363(f). *NJ Affordable Homes*, 2006 Bankr. LEXIS at *40.

Here, as established above, the APA explicitly excludes any property of Rembrandt, and that ends the inquiry. As to *In re Whitehall Jewelers Holdings, Inc.*,

Case No. 08-11261 (KG), 2008 WL 2951974, at *9 (Bankr. D. Del. July 28, 2008) upon which Petitioners mistakenly rely, the case merely stands for the proposition that a debtor or trustee may not sell property through a 363 sale unless that property constitutes property of the debtor's bankruptcy estate. In *Whitehall*, the debtors who were seeking to sell consigned goods did not even attempt to make a prima facie showing that the goods to be sold were property of the estate. *Id.* Here, the Trustee is not seeking to sell assets that are not property of the estate, the APA specifically excludes from the sale the Rembrandt License or any physical assets that contain Rembrandt Intellectual Property, and the Trustee is not proposing to sell the intellectual property, contracts or any other assets owned by the Non-Debtor Subsidiaries.

Therefore, Rembrandt does not have an "interest" in the Non-Debtor Subsidiaries' property; the only thing that Rembrandt has at this juncture is a "claim" that something owned or controlled by another foreign subsidiary that is indirectly owned by one of the Non-Debtor Subsidiaries contains Rembrandt "know how" or trade secrets (the "Rembrandt Claim"). No evidence has been provided to show that the Debtors received "know how" from Rembrandt or that the Trustee is transferring any assets containing any Rembrandt, technology, "know how" or intellectual property. In fact, even if the APA did not explicitly exclude property belonging to

Rembrandt, the Rembrandt Claim is the subject of a bona fide dispute (and thus may be sold at a section 363 sale).

>   **3.**     **Petitioners are Not Entitled to a Stay and Have Failed to First Seek Relief from the Bankruptcy Court Under Federal Rule of Bankruptcy Procedure 8007(a)(1) Without Explanation of the Failure to Do So.**

Federal Rule of Bankruptcy Procedure 8007(a)(1) provides that: "In General. Ordinarily, a party must move first in the bankruptcy court for the following relief: (A) a stay of a judgment, order, or decree of the bankruptcy court pending appeal; . . ." F.R.B.P. 8007(a)(1). Appellants who seek issuance of a stay pending appeal in the district court without first moving for relief in the bankruptcy court face unique and often insurmountable hurdles. *See, e.g., TGP Communs., LLC,* No. 24-13938-MAM, 2024 Bankr. LEXIS 2071 (Bankr. S.D. Fla. Sep. 6, 2024) (citing *Sewanee Land, Coal & Cattle v. Lamb (In re Sewanee Land, Coal & Cattle, Inc.)*, 735 F.2d 1294, 1295 (11th Cir. 1995) (dismissing appeal as moot); see *also Beeman v. BGI Creditors' Liquidating Trust (In re BGI, Inc.)*, 504 B.R. 754, 761-62 (S.D.N.Y. 2014). "If the party improperly bypasses the bankruptcy court and seeks a stay first from the district court, the district court lacks the jurisdiction to hear the matter." *In re Taub*, 470 B.R. 273, 276 (E.D.N.Y. 2012).

Petitioners failed to comply with the requirement that a party seeking a stay in the first instance in District Court demonstrate why sidestepping the Bankruptcy Court was appropriate. Nothing pled by Petitioners supports their decision to

sidestep the Bankruptcy Court with their request for a stay of the Sale Order. There is no indication the court was not available or unwilling to schedule a hearing, or that Petitioners even attempted to do so.

Petitioners state in conclusory fashion that they didn't have time: "Here, the Bankruptcy Court has made it abundantly clear that the Sale Order is to be entered imminently, which order would make the relief impossible." Petition at 35. The statement is perplexing. Petitioners fail to explain why a stay request in Bankruptcy Court would be untimely or inappropriate, and why relief there was not practicable. Petitioners seem to say that they didn't believe they would be given relief because the court indicated the Sale Order would be entered. This justification is unsupportable.

First, the Bankruptcy Court explained the Sale Order would be entered <u>in the future</u> and gave Petitioners three (3) days to comment on the Sale Order prior to its entry. In that same period and <u>before the entry of the Sale Order</u>, Petitioners filed two (2) separate Notices of Appeal. Despite Petitioners' claim of timing issues, Petitioners, in the same period filed numerous other pleadings, which included over 1000 pages.

Perhaps Petitioners failed to seek a stay from the Bankruptcy Court because they believed it would be denied. But that certainly does not relieve Petitioners from the obligation to make the request. *In re Strong*, No. AP 17-50646 (BLS), 2018 WL

936103, at *3 (D. Del. Feb. 14, 2018) (holding "Appellant's assumption that the Bankruptcy Court would rule against him based on prior rulings was not a sufficient reason to seek a stay first in this Court rather than seeking it first in the bankruptcy court."); *In re Anderson*, 560 B.R. 84, 89–90 (S.D.N.Y. 2016) (suggesting movant bypassed the bankruptcy court because the bankruptcy court was keenly aware of movant's previous misconduct). By side-stepping the Bankruptcy Court, Petitioners did the District Court a disservice by depriving the District Court of the Bankruptcy Court's opinion, expertise, and overall view of the Debtors' cases.

### 4.    The Stay Request Should be Denied.

The decision as to whether to grant a stay of an order pending appeal lies within the sound discretion of the court. *See, e.g., In re General Motors Corp.*, 409 B.R. 24, 30 (Bankr. S.D.N.Y. 2009) ("*General Motors*"); *In re Overmyer*, 53 B.R. 952, 955 (Bankr. S.D.N.Y. 1985). As the District Court held in *ACC Bondholder Grp. v. Adelphia Commc'ns. Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 346 (S.D.N.Y. 2007) ("*Adelphia*"), the court must consider four (4) factors in exercising this discretion: "(1) whether the movant will suffer irreparable injury absent a stay, (2) whether a party will suffer substantial injury if a stay is issued, (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal, and (4) the public interest that may be affected." *Id.*

### a.  **Irreparable Harm**

Irreparable harm is the principal prerequisite for a stay pending appeal. *See Rothenberg v. Ralph D. Kaiser Co.*, 200 B.R. 461, 463 (D.D.C. 1996) (quotation marks omitted); *Stern v. Bambu Sales, Inc.*, 201 B.R. 44, 46 (E.D.N.Y. 1996) (denying stay pending appeal where movant failed to show irreparable harm).

In this case, it is important to note that Petitioners continue to argue untrue and disingenuous positions both before the Bankruptcy Court and this Court. Petitioners argue that the Sale Order conveys intellectual property of Rembrandt. The Bankruptcy Court and the Trustee made clear that the Trustee was conveying only the membership interests in the downstream entities and not conveying intellectual property owned by or contained in the downstream entities (as those assets do not constitute property of the Debtors' bankruptcy estates).  In the Trustee's response and in the presentation to the Bankruptcy Court, the Trustee made clear that the equity interests in downstream entities were being conveyed free and clear of claims and interests <u>but that the assets of the downstream entities were not being conveyed</u> at all and were not free and clear of any creditor claims.

Rembrandt cannot demonstrate irreparable harm because the Sale Order is conveying none of its assets or property.  Moreover, to the extent any intellectual property exists in the downstream entities, Rembrandt's interests are adequately protected in that Rembrandt retains its rights to proceed against the purchaser on the

claims it has related to its alleged but likely nonexistent intellectual property rights. Such claims are pending in an ongoing lawsuit between Rembrandt and, *inter alia*, SeeCubic, and Technovative, docketed as Rembrandt 3D Holding Ltd v. Technovative Media, Inc. et al., C.A. No. 1:23-cv-00193-JLH (D. Del.), in which the only count asserted against Technovative was a request for injunctive relief (the "District Court Case"). The District Court Case is in its very early stages and is stayed as to Technovative, therefore, Rembrandt's "claims," while far from being proven, will ultimately be determined in the District Court Case.

Simply stated, nothing in the Sale Order impairs, reduces, limits, releases, or discharges the Rembrandt claims against the purchaser and therefore Rembrandt will suffer no harm, let alone irreparable harm should the stay be denied.

Moreover, VSI is not a creditor of the Debtor, and is listed as an equity holder on the Stream's Statement of Financial Affairs. [Bankr. D.I. 57] In the last-minute plan of reorganization filed by VSI last week, VSI does not retain its equity in Stream; it is canceled. In other words, at the inception of this case, VSI's equity in Stream was worth zero. That is the same position VSI enjoys today and the same position it enjoys even under the proposed plan of reorganization it filed. It is unfathomable how the Sale Order irreparably harms a party whose equity is worth zero and was always worth zero.

The denial of the stay request leaves Rembrandt free to pursue the District Court Action to have its claims determined. Further, the denial of the stay leaves VSI exactly where it was at the onset of the cases.

### b. <u>Harm to Other Parties</u>

The harm to the Debtors' bankruptcy estates is real, and delay will cause the Debtors' bankruptcy estates irreparable harm. The Debtors' bankruptcy estates have been mired in continuous litigation over the last decade. This includes two (2) other bad faith bankruptcies filed by Rajan and his advisors, numerous state court and chancery court proceedings, proceedings in the Netherlands, and now before this Court. In other words, the party seeking the stay has to show how, in the balancing of harms, the Trustee and Debtors' bankruptcy estate will suffer less harm than the Petitioners.

In the event of a stay, $8 million in consideration to the Debtors' bankruptcy estates will evaporate leaving the estates administratively insolvent and with no money to pay unsecured creditors. Hawk will seek to return to the Delaware state courts to enforce its security interests and foreclose on its collateral to the irreparable detriment of the Debtors and their creditors. The Trustee will lose control over Technovative and, consequently, all of the equity interests in the downstream entities (Technology Holdings Delaware LLC, Media Holdings Co, LLC, and UltraD Ventures C.V.) being conveyed under the Sale Order. The harm to the Debtors'

bankruptcy estates is profound, irreparable, and far greater than any alleged harm the Petitioners could suffer.

### c. <u>Success on the Merits</u>

"As compared to the party seeking an injunction, 'an applicant seeking a stay has, relatively speaking, more difficulty establishing the first factor, the likelihood of success on the merits, due to the difference in procedural posture.'" *See Newspaper, Newsprint, Magazine and Film Delivery Drivers, Helpers, and Handlers, Int'l Brotherhood of Teamsters, Local Union No. 211 v. PG Publ'g Co., Inc.*, Case No. 19-01472, 2019 U.S. Dist. LEXIS 232000, 2019 WL 9101872, at *3 (W.D. Pa. Dec. 27, 2019) (quoting *Dehainaut v. Cal. Univ. of Pa.*, Case No. 10-00899, 2011 U.S. Dist. LEXIS 96841, 2011 WL 3810132, at *2 (W.D. Pa. Aug. 29, 2011)); *see also Cipla Ltd. v. Amgen Inc.*, Case No. 19-00044, 2019 U.S. Dist. LEXIS 78384, 2019 WL 2053055, at *1 (D. Del. May 9, 2019) ("A 'strong showing' of likelihood of success is required to prevail on a Rule 62(d) motion." (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S. Ct. 2113, 95 L. Ed. 2d 724 (1987))).

The majority of Petitioners' claims center around the Bankruptcy Court's factual findings, which this court must give substantial deference to unless clearly erroneous. Only legal conclusions are reviewed *de novo*. In these cases, the Sale Order makes conclusions and findings as to the good faith of the purchaser, the dispute of Rembrandt with respect to its claimed intellectual property rights in the

downstream entities, and the conclusion that Rembrandt's interest, if any, is subject to Section 363(f). These findings are not likely to be reversed by this Court.

Moreover, the Petitioners continue to argue the same issues they raised at the Bidding Procedures hearing, in their Objections to the Sale Motion, and at the sale hearing. All these issues were specifically addressed and dismissed by the Bankruptcy Court in the Sale Order. In that respect the Petitioners' positions are ones fully reviewed and denied by the Bankruptcy Court. *See Cottillion v. United Ref. Co.*, Case No. 09-0140E, 2014 U.S. Dist. LEXIS 177243, 2014 WL 7344005, at *3 (W.D. Pa. Dec. 23, 2014) (concluding that the defendants' reliance on the same arguments that were rejected on summary judgment did not meet the burden of the analysis's first prong); *Muniauction, Inc. v. Thomson Corp.*, Case No. 01-01003, 2007 U.S. Dist. LEXIS 61459, 2007 WL 2406950, at *1 (W.D. Pa. Aug. 21, 2007) ("Defendants' position becomes no stronger through repetition.").

### d.  Public interest

It is well held that "public interest favors the expedient administration of the bankruptcy proceedings." *See In re Savage & Assocs, P.C.*, No. 05 Civ. 2072, 2005 U.S. Dist. LEXIS 3161, 2005 WL 488643, at *2 (S.D.N.Y. Feb. 28, 2005). Indeed, compromises are favored in bankruptcy precisely because they "minimize litigation and expedite the administration of a bankruptcy estate." *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). In these cases, the Debtors' financial and

managerial issues have been ongoing for years. Only upon the appointment of the Trustee was the wasteful litigation, the needless acrimony, and endless infighting between the Secured Creditors and the Debtors' principals concluded. There is little doubt that without the Trustee's cool-headed and fresh look at these cases, Rajan's activity, the incurrence of unnecessary and wasteful expenses, and the delay to the real creditors of the Debtors would have needlessly continued. The instant resolution and sale bring the major disputes in these cases to a substantial conclusion.

### e. **Bond**

Moreover, where a movant seeks imposition of a stay without a bond, "the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement." *Triple Net Invs. IX, LP v. DJK Residential (In re DJK Residential, LLC)*, No. 08-10375, 2008 U.S. Dist. LEXIS 19801, 2008 WL 650389, at *2 (S.D.N.Y. Mar. 7, 2008); *see also General Motors*, 409 B.R. at 30 (noting that the burden on the movant seeking the extraordinary relief of a stay is a "heavy" one).

Here, a bond would be required as the ramifications to the Debtor estates by granting a stay to Petitioners, as detailed above, are so devastating and profound. The Trustee believes a bond in the full amount of the Hawk Debt of $180,000,000.00 is required. This is the Debtors' bankruptcy estates' exposure to the claims of the

Secured Creditors should the sale fail to close, and it is determined that the Petitioners' appeal was without merit.

### A.    Withdrawal of the Reference is Not Appropriate in This Case

There are "two mechanisms – one permissive and one mandatory – by which the district court can withdraw all or part of a proceeding before the bankruptcy court and return it to the district court." 28 U.S.C. § 157(d); *In re Earth Pride Organics, LLC*, 602 B.R. 1, 12 (E.D. Pa. 2019).

Mandatory withdrawal under 28 U.S.C. 157(d) must occur where resolving the proceeding "requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." Because "a literal application of [this] sentence could have the unintended result of permitting the removal of most bankruptcy matters to the district court," it "has been read narrowly, so that withdrawal of the reference is mandatory only where resolution of the claims will require 'substantial and material' consideration of non-code federal *statutes* that have more than a de minimis impact on interstate commerce." *Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 1999 WL 179749, at *2 n.2 (E.D. Pa. Mar. 17, 1999) (emphasis added) (quoting *In re Schlein*, 188 B.R. 13, 14 (E.D. Pa. 1995)); *In re Forks Specialty Metals Inc.*, , 2020 WL 2098099, at *1 (E.D. Pa. May 1, 2020) (same).

Permissive withdrawal, on the other hand, is appropriate in the court's discretion "for cause shown." 28 U.S.C. § 157(d). The "cause" requirement "creates a presumption that Congress intended to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Hatzel v. Buehler, Inc. v. Cent. Hudson Gas & Elec. Corp.*, 106 B.R. 367, 371 (D. Del. 1989). That presumption is "heavily weighted" against withdrawal and can only be overcome where a movant proves "that cause exists to withdraw the reference." *Seitz v. Rothermel*, 638 B.R. 846, 849 (E.D. Pa. 2022) (internal citations omitted). The party seeking withdrawal bears the burden of establishing cause. *Earth Pride Organics, LLC*, 602 B.R. at 12.

To determine whether cause exists, the Court must consider the five factors outlined by the Third Circuit in *In re Pruitt*: "(1) promoting uniformity in bankruptcy administration; (2) reducing forum shopping and confusion; (3) fostering the economical use of the debtors' and creditors' resources; (4) expediting the bankruptcy process; and (5) [accounting for] the timing of the request for withdrawal." *Feldman v. ABN AMBRO Mortg. Grp., Inc.*, 2020 WL 618604, at *3 (E.D. Pa. Feb. 10, 2020) (citing *In re Pruitt*, 910 F.2d at 1168). The *Pruitt* factors are a non-exhaustive list of relevant considerations. *Id.* A court's decision regarding withdrawal is also "guided by whether (i) the underlying proceeding involves 'core' or 'non-core' claims, and (ii) any party has asserted a right to a jury trial to which it

is constitutionally entitled." *In re Earth Pride Organics*, 602 B.R. at 13-14. The "cause" standard is a high bar rarely met; "[s]everal courts have found that only truly exceptional and compelling circumstances' warrant a withdrawal of reference." *Forks Specialty Metals*, 2020 WL 2098099, at *2 (internal citations and quotations omitted); *see also In re Wash. Mfg. Co.*, 133 B.R. 113, 116 (M.D. Tenn. 1991) ("[T]he Court finds that the 'cause' standard in the non-mandatory withdrawal provision is a high one. Thus, only a compelling cause warrants withdrawal from the automatic reference to bankruptcy under the non-mandatory provision."). Moreover, even if a court finds cause exists, it is not required to withdraw the reference. *Forks Specialty Metals*, 2020 WL 2098099, at *2 ("Even if cause exists, there is no mandate that the reference must be withdrawn.") (internal citations and quotations omitted).

### 1.    Mandatory Withdrawal Is Unwarranted

A district court must withdraw a reference to the bankruptcy court if, and only if, resolving the claims would require "'substantial and material' consideration of non-code federal statutes that have more than a de minimis impact on interstate commerce." *Times Mirror Magazines, Inc.*, 1999 WL 179749, at *2 n.2 (quoting *In re Schlein*, 188 B.R. at 14). Petitioners have demonstrated no such need here.

Here, the Petitioners clearly are not entitled to mandatory withdrawal of the reference as they have failed to make any showing that their concerns require

'substantial and material' consideration of non-Bankruptcy Code federal statutes that have any impact on interstate commerce. To trigger a mandatory withdrawal of reference, a proceeding must necessitate (1) consideration of federal statutes, (2) that is "substantial and material," and (3) the statutes must have more than a de minimis impact on interstate commerce. *Id.* Petitioners have pointed to "law relating to due process and intellectual property" as their grounds for mandatory withdrawal. They have not, however, demonstrated that their claims actually implicate any specific federal statute[3] or require substantial consideration of intellectual property law. The APA explicitly excludes any Rembrandt property from the Assets being sold, and the Bankruptcy Court has repeatedly rejected the notion that Rembrandt "property" is included in the Assets. Instead, Rembrandt's "claims", which are entirely unproven, are fully preserved, are specifically included in the APA as an assumed liability by the Buyer and are currently pending in the District Court Action

---

[3] Petitioners cite the Fifth and Fourteenth Amendments to the U.S. Constitution and the Federal Rules of Civil Procedure. Neither are federal statutes. *See Noll v. Peterson*, 87 A.F.T.R.2d 2001-2475, 2001 WL 721733, at *3 (D. Idaho May 14, 2001*), report and recommendation adopted*, 2001 WL 846493 (D. Idaho June 15, 2001) ("Article III of the Constitution is not a statute[.]"); *Joseph F. v. Comm'r of Soc. Sec.*, 2023 WL 3853682, at *12 (E.D. Mich. June 6, 2023), *aff'd sub nom. Fortin v. Comm'r of Soc. Sec.*, 112 F.4th 411 (6th Cir. 2024) ("[T]he Constitution is not a statute or regulation[.]"); *Apostolic Pentecostal Church v. Colbert*, 169 F.3d 409 (6th Cir.1999) (holding Federal Rules of Civil Procedure are not a "statute" of the United States for F.R.C.P. 69(a) exception purposes).

currently pending in Delaware. Petitioners have not established entitlement to withdrawal of reference on this ground, nor can they.

Petitioners have also not addressed the absurd result that would be achieved if the reference was withdrawn as to the entirety of these cases: this Court would inherit the entire bankruptcy cases including a contested plan confirmation process, the claims adjudication process, contested fee applications and litigation against VSI, Rembrandt and potentially others. For the reasons set forth above, withdrawal of the reference must be denied.

### 2. Movants Have Not Shown Cause for Permissive Withdrawal

Petitioners also fail to show cause exists to grant them permissible withdrawal. None of the *Pruitt* factors weigh in their favor, nor do the supplemental factors. Withdrawal of the reference would detract from the smooth and uniform administration of the Debtors' bankruptcies, not promote it, as it would enable the movants' relentless attempts to stymy and hinder the progress of those bankruptcies. Allowing the Petitioners to continue their years-long efforts to pursue the interests of Rajan, VSI, and Rembrandt – not the Debtors' – at the cost of the bankruptcy estates' time and money would not only waste the Debtors' resources to the detriment of creditors, but also hamstring the completion of the bankruptcy process

by the Trustee. Withdrawing the reference would also allow Petitioners to forum shop and sow further confusion at the Debtors' expense.[4]

Moreover, the timing of the request for withdrawal provides further cause for suspicion. Approval of the Hawk Settlement was sought by the Trustee in May of this year. The Petitioners have had seven (7) months to address their concerns and have elected to wait until the very last minute to request the reference be withdrawn, not to mention four emergency motions filed in the evening of the day before a holiday, several appeals and an unconfirmable plan of reorganization – all filed in the last two weeks. The Petitioners' request to this Court is clearly just an effort to forum shop because they do not like the results they are getting with the Bankruptcy Court.

The supplemental factors only emphasize the conclusion suggested by the *Pruitt* factors: cause to withdraw the reference doesn't exist here. It would be counterproductive and an overwhelming burden on this Court. The underlying proceeding involves "core" claims, as it centers on the sale of the Debtors' Assets

---

[4] This is not the first time that Rajan and Rajan-controlled companies have sought to withdraw a reference to the bankruptcy court. In *Stream TV Networks, Inc. v. Stastney*, they requested the same relief – and it was denied after consideration of the *Pruitt* and supplemental factors. No. 23-MC-135-KSM, 2023 WL 7928682, at *7 (E.D. Pa. Nov. 16, 2023) ("This pattern of conduct suggests that Plaintiffs' motion to withdraw the reference is yet another improper attempt to delay and forum shop. Taking this into consideration along with Plaintiffs' failure to offer any other explanation why the Bankruptcy Court would be ill-equipped to consider Plaintiffs' claims . . . the Court finds this factor weighs against withdrawal of the reference.").

and the obligations of a bankruptcy trustee. And, no party has asserted a right to a jury trial to which they are constitutionally entitled. All seven factors considered by courts in determining whether cause exists lead to the same conclusion – withdrawal of the reference is not warranted.

## IV.    CONCLUSION

In light of the foregoing facts and authorities, the Petition and requested relief should be denied.

Respectfully submitted,


Dated: December 11, 2024                    By: */s/ Steven M. Coren*
                                            Steven M. Coren, Esquire
                                            COREN & RESS, P.C.
                                            Two Commerce Square, Suite 3900
                                            2001 Market Street
                                            Philadelphia, PA 19103
                                            Telephone: (215) 735-8700

                                            and

                                            By: */s/ Michael D. Vagnoni*
                                            Michael D. Vagnoni, Esquire
                                            Edmond M. George, Esquire
                                            OBERMAYER REBMANN
                                            MAXWELL & HIPPEL LLP
                                            Centre Square West
                                            1500 Market Street, Suite 3400
                                            Philadelphia, PA 19102
                                            Telephone: (215) 665-3066

                                            *Counsel to the Trustee*

36